## JOHNS *v.* WILSON.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 67. Submitted November 11, 1900.—Decided March 1, 1901.

Under the practice in Arizona the grantee of a mortgagor, who has agreed to pay the notes secured by the mortgage, may be held liable for a deficiency upon the sale of the mortgaged premises, in a direct action by the mortgagee.

In such action the grantee of the original mortgagor is the party primarily liable to the mortgagee for the debt, the relation of the grantee and mortgagor toward the mortgagee, as well as between themselves, being that of principal and surety.

Where a decree of foreclosure and sale against the original mortgagor and his immediate grantee is ineffectual, by reason of the fact that, a few days before the filing of the bill, the grantee conveyed the premises to a second grantee by a deed which was withheld from the record until after the foreclosure proceedings had been begun, a bill will lie to set aside the sale, to annul the deed upon the ground of fraud, and to decree a new foreclosure and sale of the same premises.

While it is possible that the mortgagee might have been able to obtain relief by an amended bill in the original suit, a new action is the proper remedy, where he has been mistaken in his facts, especially if such mistake has been brought about by the contrivance of the legal owners.

THIS was a complaint, in the nature of a bill in equity, under the Arizona code, filed in the district court of Maricopa County, by the appellee, Wilson, (who had already, in a prior suit, foreclosed a mortgage upon certain real estate against John M. Armstrong, mortgagor, and Robert E. Daggs, purchaser of the premises,) against Alvin L. Johns, subsequent purchaser *pen-*

*dente lite* of the same premises, and also against William A. Daggs, tenant in possession, Robert E. Daggs, his landlord, and A. Jackson Daggs, agent of Robert E., to charge Johns, and Robert E. Daggs with the payment of the mortgage debt, for a foreclosure of the mortgage against all the defendants, for a receiver and for a judgment against all for damages.

The complaint, which was filed June 22, 1895, alleged that when the former bill foreclosing the mortgage was filed, April 26, 1894, John M. Armstrong, the mortgagor, and Robert E. Daggs, who purchased the premises December 18, 1893, were the only parties known to the plaintiff to be liable upon the notes, or to have any interest whatever in the mortgaged property; but that the defendants Robert E. Daggs and A. Jackson Daggs, conspiring together to hinder and obstruct the plaintiff in the collection of his mortgage debt, procured a deed of conveyance of the property from Robert E. Daggs to Johns for the sole purpose of hindering, delaying and obstructing him in the collection of his mortgage debt; that the deed, though dated March 17, 1894, before the proceedings for a foreclosure were begun, was withheld from record until April 28, 1894, after the summons in the foreclosure action had been served, and after the *lis pendens* had been filed; that in this deed Johns expressly agreed and bound himself to pay the plaintiff's mortgage debt; that William A. Daggs, who was at the time of the foreclosure in possession as tenant of Robert E. Daggs, did not advise plaintiff of his surrender of the premises as tenant of Robert E. Daggs, or of his having taken possession as the tenant of Johns; and that such abandonment and release of the property, and the taking possession thereof as tenant of Johns, were done secretly, without any notice to the plaintiff, with intent to deceive him into the belief that he (William A.) was still holding possession as tenant of Robert E. Daggs, and that the plaintiff, on account of such secret transfer of possession, if any was made, was deceived, as the defendant intended him to be, and that the foreclosure action therefore proceeded to judgment without his joining or making the said Johns and William A. Daggs defendants therein; that plaintiff had no knowledge or informa-

tion, when he began his action and filed his *lis pendens,* that any other persons than Robert E. Daggs had any claim to the premises. Wherefore plaintiff prayed for a judgment against Robert E. Daggs and Alvin L. Johns, who had assumed and agreed to pay the mortgage debt, for the amount of such debt, and for the sum of one thousand dollars as damages; that his mortgage be adjudged unpaid and unsatisfied, and that the same be foreclosed against all the defendants and all persons holding under them, and for such further relief as the circumstances of the case required.

On a hearing upon pleadings and proof a judgment was rendered setting aside the sale had in the foreclosure suit of *Wilson* v. *Armstrong and Daggs,* and the satisfaction of the judgment made upon such sale; that the plaintiff Wilson recover of Robert E. Daggs and Alvin L. Johns, who had assumed and agreed to pay the mortgage debt, the amount of such debt, declaring such amount, $8541.13, to be a lien upon the property, which was also foreclosed; ordering a sale of the premises as against Robert E. Daggs and Johns, and also finding that appellants had fraudulently conspired together to cheat, wrong and defraud the appellee, and declaring the deed of Daggs to Johns to be fraudulent and void. It was further ordered that the former judgment stand and be carried into effect by a resale of the property, and in case the proceeds be insufficient to pay the judgment, that the sheriff make the deficiency out of the other property of Robert E. Daggs and Johns. The property was subsequently sold and bid in by the appellee for $2000, leaving a deficiency of $6861.26. There was no decree for damages.

An appeal was taken to the Supreme Court of Arizona, which modified the action of the lower court by omitting therefrom the personal judgment against Johns for the deficiency, but otherwise affirming it, 53 Pac. Rep. 583, and, upon an appeal being taken to this court, made the finding of facts set forth in the margin.[1]

---

[1] *Finding of Facts.*

1. That on the 24th day of April, 1893, one John S. Armstrong executed a mortgage on certain real estate, described in the complaint herein, to one

Opinion of the Court.

*Mr. A. J. Daggs* for appellants.

*Mr. D. H. Pinney* and *Mr. Louis T. Orr* for appellee.

MR. JUSTICE BROWN, after making the above statement, delivered the opinion of the court.

This case involves the right of a mortgagee to relief against

James Wilson, to secure the payment of two certain promissory notes in said complaint set forth, each being for the sum of $3250.00 and interest, and dated on said 24th day of April, 1893.

2. That afterwards and on the 18th day of December, 1893, said Armstrong sold said premises thus mortgaged to defendant (appellant here) R. E. Daggs, and conveyed the same by certain deed of conveyance, in which said defendant R. E. Daggs agreed and bound himself, his heirs, executors and assigns, to pay or cause to be paid to the said Wilson the aforesaid notes and mortgage, under which sale and transfer the said R. E. Daggs entered into the possession of the said premises by one W. A. Daggs as his tenant.

3. That on the 26th day of April, 1894, default having been made in the payment of the said notes secured by said mortgage, the said Wilson commenced an action in the district court of Maricopa County against the said Armstrong and said R. E. Daggs for the recovery of the amount due upon said notes and for the foreclosure of the mortgage upon the premises aforesaid, and on the same date filed a *lis pendens* in the office of the recorder of said county.

4. That at the time of the beginning of said suit the defendant W. A. Daggs was in the possession of the said premises, and the title to said premises, so far as disclosed by the record, then appeared to be in said R. E. Daggs.

5. That after personal service upon the defendants R. E. Daggs and J. S. Armstrong, and default made and entered therein, said action proceeded to judgment in the said district court on the 8th day of May, 1894, against the said defendants J. S. Armstrong and R. E. Daggs, for the full amount due, with costs, and for the foreclosure of the mortgage.

6. That thereafter and on the 6th day of June, 1894, the said premises were sold by the sheriff of Maricopa County under execution and order of sale issued upon the said judgment, and were bid in by the plaintiff for the full amount of his judgment.

That thereafter and on the 12th day of December, 1894, the said sheriff, there having been no redemption, executed a deed conveying or purporting to convey the premises aforesaid to the plaintiff by virtue of said foreclosure sale; and thereafter, upon a demand for possession of the premises by the said purchaser under said sheriff's deed, the aforesaid W. A. Daggs,

one who secretly purchased the premises just prior to a bill being filed for the foreclosure of the mortgage, and who withheld his deed from record until after the summons in the foreclosure suit had been served, and a *lis pendens* had been filed.

At the time the original foreclosure suit was begun, the de-

---

then being found in possession, refused to surrender the same and claimed to hold possession thereof as the tenant of one A. L. Johns, and has from that time to the present continued to hold and occupy said premises and property as such tenant of A. L. Johns, to the total exclusion of plaintiff James Wilson.

7. That on the 28th day of April, 1894, after the service of summons upon said R. E. Daggs in said action and the filing of the *lis pendens* aforesaid, a deed was placed on record in the office of the county recorder of said county, which said deed purported to convey the property in question from said R. E. Daggs to said A. L. Johns, of Chicago, Illinois.

That at the time the demand for possession, as aforesaid, was made by said Wilson upon the defendant W. A. Daggs, said W. A. Daggs claimed and asserted that on the first day of April, 1894, he ceased to be the tenant of R. E. Daggs and thereupon became the tenant of said A. L. Johns, and took possession of said property for said Johns at said time, and from that time forward held possession of said premises as the tenant of said A. L. Johns and not as the tenant of said R. E. Daggs.

8. That at the time of the commencement of said action to foreclose said mortgage the said plaintiff in said action, James Wilson, had no knowledge or information whatsoever that any other person than the said R. E. Daggs and J. S. Armstrong had any claim to said premises.

9. That said defendants R. E. Daggs and A. J. Daggs did conspire together to hinder and obstruct the said James Wilson in the collection of his said mortgage debt, and to that end did procure the said deed of conveyance from the said R. E. Daggs to said A. L. Johns, and to said end and for the said purpose did withhold the said deed of conveyance from the record until after the said foreclosure suit had been begun by the service of summons upon the defendants therein.

That the said deed from the said R. E. Daggs to said A. L. Johns was fraudulent and void as against said James Wilson and as against aforesaid mortgage, and was made and executed by the said Daggs and was recorded by him, the said Daggs, for the purpose of hindering and delaying the plaintiff in the securing the title and possession to the aforesaid mortgaged premises and for the purpose of hindering and obstructing and delaying plaintiff in said foreclosure suit, James Wilson, in the prosecution of said suit against said John S. Armstrong and R. E. Daggs and for the purpose of hindering, delaying and obstructing said Wilson in the sale of said premises and in obtaining satisfaction of his said judgment by process of law.

fendant William A. Daggs was in possession of the premises, and the title, so far as disclosed by the record, then appeared to be in Robert E. Daggs. But after it had culminated in a sale of the premises, June 6, 1894, and the sheriff had executed his deed December 12, 1894, William A. refused to surrender possession, and claimed to hold as the tenant of Johns, and from that time continued to hold as such tenant, to the exclusion of plaintiff.

The Supreme Court found as a fact that the defendants Robert E. and A. Jackson Daggs had conspired together to hinder and obstruct Wilson in the collection of his mortgage debt, and to that end procured the deed from Robert E. Daggs to Johns, and withheld it from record until after the foreclosure suit had been begun; that such deed was fraudulent and void as against Wilson, and was executed and recorded by Robert E. Daggs for the purpose of hindering and delaying the plaintiff in securing possession of the mortgaged premises, and of obtaining satisfaction of his judgment by process of law.

A large number of errors are separately assigned by the different defendants, but we shall notice only such as were passed upon by the Supreme Court or pressed upon our attention in the briefs.

1. The most important is that Robert E. Daggs, the grantee of the original mortgagor, was not liable in a direct action by the mortgagee, because no privity of contract was shown between such grantee and the plaintiff mortgagee; and the action was not brought in the name of, or for the benefit of, the mortgagor Armstrong.

This assignment should be read in connection with the second finding, which is in substance that, in December, 1893, Armstrong sold to the defendant Robert E. Daggs the premises previously mortgaged to Wilson, the appellee, and conveyed the same to him by deed, in which Daggs agreed and bound himself to pay the two notes executed by Armstrong and secured by the mortgage. Under this sale and transfer Daggs entered into possession of the premises by William A. Daggs, his tenant. There was also in the deed of March 17, 1894, from Robert E. Daggs to Alvin L. Johns, as appears from a copy of

the deed sent up with the record, a similar agreement by Johns to assume and pay the Wilson mortgage; but as the Supreme Court held this deed to be fraudulent and void, and that there could be no recovery upon the agreement against Johns, this deed becomes immaterial. The question is, whether there can be a personal judgment against Daggs upon the agreement in *his* deed from Armstrong to pay this mortgage. In the first decree rendered in the suit of *Wilson* v. *Armstrong and Robert E. Daggs,* there was a personal judgment against Armstrong upon the notes, which the mortgage was given to secure, and an order for a foreclosure and sale of the premises; and in case the proceeds of the sale were insufficient to satisfy the judgment, the sheriff should make the balance out of any other property of the defendant Armstrong; but there was no personal judgment against Robert E. Daggs. Such judgment was prayed for and granted in this case.

The question whether a mortgagee can recover against the grantee of the mortgagor upon a stipulation in his deed from the mortgagor to assume and pay off the mortgage, as well as the more general question how far a third party may avail himself of a promise made by the defendant to another party, has been the subject of much discussion and difference of opinion in the courts of the several States, but we think the decisions of this court have practically removed it from the domain of controversy.

In *National Bank* v. *Grand Lodge,* 98 U. S. 123, 124, the Masonic Hall Association, a Missouri corporation, had issued a large number of bonds which the Grand Lodge had assumed by resolution to pay. The bank brought an action at law against the Grand Lodge to compel the payment of certain coupons attached to these bonds, of which it was the holder, and this court held that it was not entitled to recover, upon the ground that the holders of the bonds were no parties to the resolution, and there was no privity of contract between them and the Lodge. In delivering the opinion of the court, Mr. Justice Strong observed: "We do not propose to enter at large upon a consideration of the inquiry how far privity of contract between a plaintiff and defendant is necessary to the maintenance of an action of as-

sumpsit.  The subject has been much debated, and the decisions are not all reconcilable.  No doubt the general rule is that such a privity must exist.  But there are confessedly many exceptions to it.  One of them, and by far the most frequent one, is the case · where, under a contract between two persons, assets have come to the promisor's hands or under his control which in equity belong to a third person.  In such a case it is held that the third person may sue in his own name.  But then the suit is founded rather on the implied undertaking the law raises from the possession of the assets, than on the express promise."

*Keller* v. *Ashford*, 133 U. S. 610, was a bill in equity by Keller, the mortgagee, against Ashford, the grantee of the land subject to this mortgage, which he had agreed to pay.  It was held after full examination of the authorities, first, that the mortgagee could not sue at law, citing *National Bank* v. *Grand Lodge*, 98 U. S. 123, and *Cragin* v. *Lovell*, 109 U. S. 194 ; second, that in equity, as at law, the contract of the purchaser to pay the mortgage, being made with the mortgagor and for his benefit only, creates no direct obligation of the purchaser to the mortgagee ; but, third, that under the equitable doctrine that a creditor shall have the benefit of any obligation or security given by the principal to the surety for the payment of the debt, the mortgagee was entitled to avail himself of an agreement in a deed of conveyance from the mortgagor, by which the grantee promised to pay the mortgage.  This is upon the theory that the purchaser of land subject to the mortgage becomes the principal debtor, and the liability of the vendor, as between the parties, is that of surety.

In *Willard* v. *Wood*, 135 U. S. 309, in error to the Supreme Court of the District of Columbia, it was held that the question whether the remedy of the mortgagee against the grantee of the mortgagor to enforce an agreement contained in the deed to him to pay the mortgage debt, be at law or in equity, was governed by the *lex fori*, and that in the District of Columbia such remedy was by bill in equity only.

In *Union Mutual Life Ins. Co.* v. *Hanford*, 143 U. S. 187, it was said to be " the settled law of this court, that the grantee is not directly liable to the mortgagee, at law or in equity ; and

the only remedy of the mortgagee against the grantee is by a bill in equity in the right of the mortgagor and grantor, by virtue of the right in equity of a creditor to avail himself of any security which his debtor holds from a third person for the payment of the debt." The court restated the rule laid down in *Willard* v. *Wood*, 135 U. S. 309, that the question of the remedy of the mortgagee, whether at law or in equity, was to be decided by the law of the place where the suit was brought. The material question in that case was whether the giving of time to the grantee, without the assent of the grantor, discharged the latter from personal liability. It was held that it did, citing *Shepherd* v. *May*, 115 U. S. 505.

As, however, under the Arizona code, there is no distinction between suits at law and in equity, we see no reason to doubt that this action will lie. Indeed, in *Williams* v. *Naftzger*, 103 California, 438, the Supreme Court of California, whose code was practically adopted by the legislature of Arizona, thought an agreement on the part of the grantee to pay and discharge a mortgage debt upon the granted premises, for which his grantor was liable, renders the grantee liable therefor to the mortgagee; and in an action for a foreclosure of the mortgage, if the mortgaged premises are insufficient to satisfy the mortgage debt, judgment may be rendered against him as well as against the mortgagor for the amount of such deficiency, citing *Keller* v. *Ashford*, 133 U. S. 610, 622.

2. Further objection is made to this proceeding upon the ground that it is not shown that the mortgagor "had been exhausted," or that he is insolvent. If by this is meant that, after the sale of the property, the mortgagee is bound primarily to proceed against the mortgagor personally for any deficiency, the position is inconsistent with the doctrine of the cases above cited, in which it is assumed that the purchaser, who has agreed to pay the mortgage, is the principal debtor, and the mortgagor is surety. This view is thus concisely stated by Mr. Justice Gray in *Union Mutual Life Ins. Co.* v. *Hanford*, 143 U. S. 187, 190: "The grantee, as soon as the mortgagee knows of the arrangement, becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable

to the latter, and the relation of the grantee and grantor toward the mortgagee, as well as between themselves, is thenceforth that of principal and surety for the payment of the mortgage debt." Undoubtedly the mortgaged property must first be applied to the payment of the debt. This was done. The judgment, though nominally against Daggs for the amount of the mortgage debt, contemplated in subsequent paragraphs that the sheriff should only make the balance out of the property of the defendant Daggs, in case the proceeds of the sale were insufficient to pay the judgment. This, too, was the language of the order of sale.

In the case of *Biddel* v. *Brizzolara*, 64 California, 354, relied upon by the appellants, the general principle was recognized that, where a purchaser of real estate from the mortgagor assumes payment of the mortgage debt, a cause of action arises, upon the principle of subrogation, in favor of the mortgagee, which he may enforce at any time within the life of his mortgage by a suit against the purchaser. In that case, however, it was held there could be no recovery, because the statute of limitations had run against the mortgage debt, and because the purchaser had reconveyed the mortgaged property to the mortgagor prior to the commencement of the action. As Armstrong could have recovered against Robert E. Daggs any deficiency he had been obliged to pay, the plaintiff could proceed against Daggs directly for such deficiency.

It is true that William A. Daggs was not made a party to the prior foreclosure bill, but his only claim to the property was that of tenant, either of Robert E. Daggs or of Johns. Robert E. Daggs was made a party to that bill, and Johns is made a party to this. We fail to see how either of them is prejudiced by William A. Daggs not being made a party to the former bill.

3. The seventh assignment, that no reason is shown for not applying for relief in the former foreclosure suit, appears to be based upon the theory that the former judgment is conclusive against the parties to the action, and that the plaintiff has no legal right to a second foreclosure. While it is true that, if the plaintiff had sought to foreclose the right of William A. Daggs

to this property, he should have been made a party to the former foreclosure, it is difficult to see how Johns would have been affected by a decree against Daggs, unless he also had been made a party. That he was not made such party is explained by the fact that his deed had not been put upon record, and that it was impossible for the plaintiff to have known, from aught that appeared to him, that Johns was the owner of the property. Where the mortgagee has no knowledge and no means of knowing that the mortgaged property has been sold by the person in whose name it stands of record, especially where such sale is brought about by a fraudulent conspiracy between the vendor and vendee, and the conveyance is withheld from record for the purpose of misleading the mortgagee, we know of no objection to a second foreclosure for the purpose of terminating the rights of the vendee. As stated in Jones on Mortgages, section 1679 : " If the owner of the equity has, through mistake, not been made a party, the mortgagee who has purchased at the sale may maintain a second action to foreclose the equity of such owner, and for a new sale, but he cannot recover the cost of the previous sale." *Bank* v. *Abbott*, 20 Wisconsin, 570 ; *Stackpole* v. *Robbins*, 47 Barb. 212 ; *Shirk* v. *Andrews*, 92 Indiana, 509 ; *Brackett* v. *Banegas*, 116 California, 278 ; *Morey* v. *City of Duluth*, 69 Minnesota, 5 ; *Benedict* v. *Gilman*, 4 Paige, 58 ; *Georgia Pacific Railroad* v. *Walker*, 61 Mississippi, 481.

While it is possible that the mortgagee might have been able to obtain relief by an amended bill in the original suit, a new action is a proper remedy where he has been mistaken in his facts, especially if such mistake has been brought about by the contrivance of the legal owners. Appellants apparently proceed upon the assumption that the possession of William A. Daggs was not only notice of his own rights to the property, and of his tenancy under Robert E. Daggs, the record owner, but also of the ownership of Johns, whose title did not appear of record, and of which the mortgagee had no actual notice. We cannot acquiesce in this assumption. It is true that plaintiff asserts in his complaint that, two days after his original bill of foreclosure was filed, William A. Daggs " claimed and

asserted" (to whom is not stated) that he had abandoned the premises as tenant of Robert E. Daggs to become the tenant of Johns. Under such circumstances, the plaintiff, if he knew of it, should have at once filed an amended bill; but his failure to do so does not seem to have resulted to the prejudice of any of the defendants, nor can it be said that plaintiff has lost his rights, except to the costs of the first suit, by failing to do so. An amended or supplemental bill is rather an alternative than an only remedy, and a failure to pursue this course ought not to debar him from resorting to another bill. *White* v. *Secor*, 58 Iowa, 533; *Bottneau* v. *Ætna Life Ins. Co.*, 31 Minnesota, 125; *Rogers* v. *Benton*, 39 Minnesota, 39; *Foster* v. *Johnson*, 44 Minnesota, 290; *Stackpole* v. *Robbins*, 48 N. Y. 665; *Moulton* v. *Cornish*, 138 N. Y. 133; *Dodge* v. *Omaha & Southwestern Railroad Co.*, 20 Nebraska, 276.

Defendants also claim a misjoinder of causes of action, in that the plaintiff sues Daggs not only for a breach of his contract of assumption of the notes set out in the complaint, and to foreclose the mortgage lien, but upon an alleged conspiracy, wherein he charges him with colluding with A. Jackson Daggs to withhold the deed to Johns from record, and prays damages in the sum of one thousand dollars for a refusal to surrender possession. As there was no recovery, however, upon this claim, we think it has become immaterial to consider whether there was a misjoinder. The same comment may be made upon the alleged misjoinder of parties.

We have examined the remaining assignments of error, of which there are a large number, contained in appellants' brief, and find them to turn upon questions of facts or as to the admission or rejection of testimony, which are foreclosed by the findings of the Supreme Court, or upon the alleged defects in procedure, which were not deemed to be of sufficient importance to be noticed in the opinion of that court. We find in none of them any sound reason for disturbing this judgment, and it is therefore

*Affirmed.*