FIRST NATIONAL BANK OF SEATTLE v. FISH et al.

(Third Division. Valdez. January 6, 1905.)

No. 69.

1. CORPORATIONS—FOREIGN CORPORATIONS—SUING IN TERRITORY—CONDITIONS PRECEDENT.

It is not necessary that a foreign corporation shall file its articles, consent to be sued, and statement in Alaska to enable it to maintain a suit in the courts there. A suit by a bank to

collect a note is not doing business, within the meaning of that statute.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, § 2544.]

2. NOVATION—ASSENT OF PARTIES.

The defendant Loomis purchased a transportation outfit, and gave his note therefor. He sold the outfit to Fish, who agreed with Loomis in writing, and in consideration of the transfer of the outfit to him, to pay the note. The owner of the note sued Fish to recover. *Held*, that the facts constituted a novation, and that Fish was liable on the contract.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Novation, § 7.]

3. ACTIONS—EQUITY AND LAW—ABOLITION OF DISTINCTION.

The distinction between actions at law and suits in equity and the forms of all such actions and suits have been abolished by statute in Alaska. There is but one form of action for the enforcement or protection of private rights and the redress or prevention of public wrongs, which is denominated a civil action.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Actions, § 156.]

4. ATTACHMENT—ACTIONS IN WHICH AUTHORIZED.

In Alaska an attachment may issue against the property of the defendant in an action upon a contract, expressed or implied, for the direct payment of money. It is not necessary, as in some jurisdictions, to allege fraud, or that the debtor has absconded, or is about to do so. *Held*, in an action to recover upon an express contract for the direct payment of money, that it is immaterial whether it is called an action at law or a suit in equity; the attachment will lie in either case.

5. SAME—AMENDMENT—TIME.

An undertaking in attachment may be amended in its formal parts at any time before judgment.

[Ed. Note.—For cases in point, see vol. 5, Cent. Dig. Attachment, §§ 378–382.]

6. SAME—VACATION—GROUNDS.

In Alaska an attachment may issue in any action upon a contract, express or implied, for the direct payment of money. *Held*, that the cause of action and the cause of attachment are the same, and that the court will not try the merits of the case upon affidavits, under section 151 of the Code of Civil Procedure.

[Ed. Note.—For cases in point, see vol. 5, Cent. Dig. Attachment, § 877.]

The complaint alleges that, on the 18th day of December, 1902, the defendant Loomis purchased from one Sol G. Simpson certain goods, wares, merchandise, horses, and outfit to the amount of $5,000, and to secure payment therefor gave his individual note to Simpson, payable one year after date, with interest at 10 per cent. per annum; that on the 5th day of February, 1903, the defendants, Loomis and Fish, became partners, under the name of the "Loomis Transportation Company"; that the goods, wares, merchandise, horses, and outfit so received from Simpson, for which the note was given, were transferred to, owned, and used by the partnership; that, in consideration for such transfer, it was mutually agreed in writing between the partners that:

"In the purchase of the said merchandise the said Loomis incurred an indebtedness of five thousand dollars, evidenced by a promissory note for said amount payable to Sol G. Simpson of Seattle, on or about December 12, 1903, which said indebtedness is hereby assumed by the partnership hereby formed. Said Oscar Fish agrees to contribute from time to time, as it may be needed by the said partnership, the sum of twenty-six hundred dollars; the said stock of goods, transportation outfit, and sum of money to be used and employed in common between them for the support and management of said business, to their mutual benefit and advantage."

It is further alleged that this partnership was dissolved by mutual consent on June 10, 1903, and that in the contract of dissolution, signed by both parties, it was agreed:

"It is further mutually agreed that the said Oscar Fish shall take into his possession and control all of the assets of the said copartnership, and shall have the right to sell and otherwise dispose of the same according to his best judgment, and in consideration therefor the said Fish agrees to pay, and does hereby assume, the liabilities of the said partnership at this date."

That thereafter, and before maturity, the note was sold and transferred for value to plaintiff, a banking corporation doing business at Seattle, Wash., which brought this action against the partners, jointly and individually, to collect the whole sum.

due thereon.   Defendant Oscar Fish demurs to the complaint, that there is a defect of parties plaintiff, a misjoinder of parties defendant, and that the facts stated do not constitute a cause of action against him.

Fred M. Brown and Edmund Smith, for plaintiff.
Goodell & Edwards, for defendant Oscar Fish.

WICKERSHAM, District Judge.   One ground of objection to the complaint is that it does not allege that the plaintiff has complied with the laws of Congress requiring a foreign corporation to file a copy of its articles of incorporation, a statement of its liabilities, and consent to be sued with the secretary of the district and the clerk of the court.   The objection is overruled.   The statute only requires a foreign corporation to take such action "before doing business in the district."   Section 225, Civ. Code.   There is nothing on the face of the complaint to show that plaintiff is doing business in the District of Alaska; the fair inference from the facts stated is that it does business only in Seattle, Wash.   A suit to collect a note in its courts is not necessarily doing business in Alaska.

Another objection urged upon the demurrer is that the complaint discloses that the plaintiff seeks to recover a personal judgment against Fish upon a promissory note made and signed by Loomis only prior to the formation of the Loomis-Fish partnership.   It is strongly urged that there is no such privity of contract between plaintiff and Fish as will support the action, and the court is cited by the defendant to the cases of National Bank v. Grand Lodge, 98 U. S. 124, 25 L. Ed. 75, and Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667, in support of the argument.

In the case of National Bank v. Grand Lodge, supra, the court says:

"No doubt the general rule is that such a privity must exist. But there are confessedly many exceptions to it. One of them, and by far the most frequent one, is the case where, under a contract between two persons, assets have come to the promisor's hands or under his control which in equity belong to a third person. In such a case it is held that the third person may sue in his own name. But there the suit is founded rather on the implied undertaking the law raises from the possession of the assets than on the express promise."

In that case the court held that the facts did not bring the case within either the rule or the exception, but in the case at bar they certainly bring it within the exception, if not within the rule itself. Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667; Johns v. Wilson, 180 U. S. 440, 21 Sup. Ct. 445, 45 L. Ed. 613.

Before the agreement made by Fish with Loomis and the copartnership to pay Loomis' debt to the plaintiff will sustain plaintiff's action against Fish, it must appear that there was a mutual agreement, founded on a consideration between all of them, to that effect.

"The mutual assent of all the three parties seems to be necessary to make an effectual novation or substitution; for so long as the debtor has made no promise, or come under no obligation to the party in whose favor the order is given, it is a mere mandate, which the creditor may revoke at his pleasure." Parsons on Contracts (6th Ed.) vol. 1, p. 220.

In the case at bar, Loomis, the copartnership, and Fish all agreed in writing upon a full consideration that the partnership and Fish should assume and pay this identical note. There was a complete substitution for value between two of the parties, and that condition existed when this action was instituted by the third (the plaintiff), who thereby assented to it; thus completing the mutuality of assent of all parties to the substituted contract.

But if it should be thought that the bringing of the suit to enforce the contract is not a sufficient assent on the part of the plaintiff, yet the case is clearly within the exception mentioned

in National Bank v. Grand Lodge, supra. The partnership first, and Fish subsequently, received, and still retains, the assets of the original promisor, including the property for which the note was given, and in consideration thereof assumed to pay the note.

"In short, if one person agrees with another primarily liable for a debt due from that other to a third person, so that as between the parties to the agreement the first is the principal and the second the surety, the creditor of such surety is entitled in equity to be substituted in his place, for the purpose of compelling such principal to pay the debt." Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667; also, Johns v. Wilson, 180 U. S. 440, 447, 21 Sup. Ct. 445, 477, 45 L. Ed. 613.

In Alaska the distinction between actions at law and suits in equity, and the forms of all such actions and suits, are abolished, and there is but one form of action for the enforcement or protection of private rights and the redress or prevention of public wrongs, which is denominated a "civil action." Section 1, Code Civ. Proc. The distinction between actions at law and suits in equity noted as important in the cases cited from the Supreme Court of the United States have no bearing in a code state or territory. Johns v. Wilson, 180 U. S. 440, 448, 21 Sup. Ct. 445, 448, 45 L. Ed. 613.

The complaint in this case states a cause of action under the first exception to the general rule mentioned by the Supreme Court of the United States in National Bank v. Grand Lodge, 98 U. S. 125, 25 L. Ed. 75, even if it does not bring the action squarely within the rule itself; consequently, the demurrer is overruled.

Defendant Fish also moves to discharge the attachment against his property (1) for the reason, as he alleges, that this is a suit in equity; (2) because the undertaking on attachment is not signed by the plaintiff, but only by the surety; and (3) because the debt sued on is secured by mortgage.

The plaintiff may cause an attachment to issue against the

property of the defendant in this territory in an action upon a contract, express or implied, for the direct payment of money. Section 135, Code Civ. Proc. It is not necessary, as it is in some states, to allege fraud, or that the debtor has absconded, or is about to do so. This case is an action to recover upon an express contract for the direct payment of money, and it is immaterial, under the statute, whether defendant calls it an action at law or a suit in equity; the attachment would lie in either case.

The undertaking in attachment is conceded to be formal in every other respect than that it is not signed by the plaintiff, but only by the surety. Section 137 provides that, upon filing the affidavit with the clerk, the plaintiff shall be entitled to have the writ of attachment issued as soon thereafter as he shall file with the clerk his undertaking, with one or more sureties, together with other formal requisites. The objection to this undertaking is that it is not "his undertaking" unless plaintiff personally signs it. This presents a real question, but, as I am satisfied that there is nothing in the statute or in the policy of the law to prevent the plaintiff from amending its undertaking at any time before judgment, I am constrained to grant its application to amend the undertaking, and save the question. Code Civ. Proc. Alaska, §§ 92, 97; Tilton v. Cofield, 93 U. S. 163, 23 L. Ed. 858.

Section 151 of the Code of Civil Procedure provides that the defendant may, at any time before judgment, except where the cause of attachment and the cause of action are the same, apply to the court or the judge thereof, where the action is pending, to discharge the attachment in the manner and with the effect provided in sections 121 and 122 for the discharge of a defendant from arrest. Sections 121 and 122 provide that a writ of arrest may be vacated on affidavits or other proofs; and if upon such hearing it appears that there was not sufficient cause to allow the writ, or that there is other good cause which

would entitle it to be discharged, it should be vacated. Since, however, an attachment may be issued in Alaska in any action upon a contract, express or implied, for the direct payment of money, it necessarily follows that the cause of attachment and the cause of action in this case are the same, and the effect of hearing the facts upon affidavit would be to try the case upon its merit before issue joined. These sections were adopted from Oregon, and have been construed by the Supreme Court of that state in the case of Bank of Winnemucca v. Mullaney, 29 Or. 268, 45 Pac. 796, to be impotent and of no effect in a case of this kind. That construction is adopted by this court (Anvil Gold Min. Co. v. Hoxie, 1 Alaska, 604; James v. Appel, 192 U. S. 129, 24 Sup. Ct. 222, 48 L. Ed. 377), and it follows that the attempt to try the question upon the affidavit of Oscar Fish that the debt was secured by mortgage cannot be sustained. That question does not appear upon the face of the pleadings, and can only be reached upon answer and trial. The motion to discharge the attachment is denied.