MARY L. VLIET, executrix, &c., of Daniel Vliet, deceased,

*v.*

CHARLES T. COWENHOVEN et al.

[Submitted March 3d, 1914. Decided April 27th, 1914.]

1. Complainant's testator held a mortgage upon a tract of land divided into three lots. The prior mortgages on lots A and B had been foreclosed when complainant's testator brought foreclosure proceedings on the remaining lot C. Through a mistake in description, the bill excluded lot C, upon which foreclosure was sought, and the sheriff's deed to complainant's testator contained the same mistake. Complainant's testator went into possession of the lot C, and after his death complainant discharged prior mortgages under the belief that she was the owner of the equity of redemption.—*Held,* that, the mistake not being the result of gross negligence but a natural one, a court of equity would relieve complainant from the effect and revive the discharged mortgage.

2. Where a mortgagee's bill for foreclosure did not describe the land sought to be foreclosed, and neither did the sheriff's deed, the foreclosure was wholly inoperative, and the mortgage was unimpaired; and hence the mortgagee, having gone into possession and discharged earlier mortgages, is entitled to subrogation, his rights being those of a mortgagee in possession.

3. Where a suit to set aside the cancellation of a mortgage was instituted within about a year after complainant discovered the mistake, and defendants' rights were in no way prejudiced by the delay, the action is not barred by laches.

4. Where defendant consented to numerous extensions of time, he cannot set up complainant's want of diligence in prosecution of the suit.

On final hearing.

*Mr. Alan H. Strong,* for the complainant.

*Mr. Freeman Woodbridge,* for the defendant.

BACKES, V. C.

The object of this bill is to restore a mortgage canceled by mistake and to foreclose it. Daniel Vliet, the complainant's testator, owned a mortgage to secure $5,250, conveying a tract of land on the southeasterly corner of George and Washington streets, in the city of New Brunswick. The tract has a frontage of eighty-five feet on George street, and some eighty-eight feet in depth. Subdivisions of this tract were subject to several prior mortgages. The first twenty-six feet, starting from the corner, which I shall call "Lot A," was covered by a mortgage of $3,000. The next lot adjoining, of thirty-four feet, which I shall call "Lot B," was covered by a mortgage of $5,000. The remaining "Lot C" of twenty-five feet, and in the record called the "Office Property," was subject to a first mortgage held by Alan H. Strong, as trustee, for $3,000, and a second mortgage of $750 held by one Robert W. Johnson.

The mortgages on "Lots A and B" had been foreclosed when Daniel Vliet, on February 25th, 1899, filed his bill in this court to foreclose his mortgage, which is therein set up in the usual form. That bill correctly alleged the foreclosure proceedings and the sales thereunder of "Lots A and B" by the descriptions con-

tained in the mortgages and then erroneously averred the result to be that the complainant's mortgage remained a lien upon the original tract of eighty-five feet, after excepting therefrom "Lots B and C," viz., on "Lot A." The mistake was carried throughout the proceedings. The *fi. fa.* directed the sheriff to sell what remained of the tract of eighty-five feet, after excepting and reserving "Lots B and C." Daniel Vliet, the complainant, was the purchaser, and the sheriff's deed to him bears the same faulty description. He immediately went into possession of "Lot C," the office building, and kept it until his death, a period of nine years; all during that time exercising absolute ownership. The complainant, in this suit, his executrix and trustee, continued in possession until her death. The substituted administrator and trustee, who has been made a party herein, followed the same course. The interest on the mortgage now sought to be restored was paid by the deceased in semi-annual installments, regularly, until the principal was paid off. Under the will of Daniel Vliet, who died in 1908, he gave his estate to his executrix in trust, with directions and power to pay off the principal and interest on mortgages covering any of his property. In discharging the directions of the will, Mary L. Vliet, the executrix and trustee, on February 26th, 1909, paid to Alan H. Strong, the holder of the mortgage, on "Lot C," $3,084.45, the principal and interest then due, who endorsed on the mortgage a receipt and a cancellation authorization, and on the same day the mortgage was canceled of record. On July 28th following, she paid the Robert W. Johnson mortgage, on which was endorsed an acknowledgment of satisfaction and an authority to cancel. This mortgage has not been canceled. After the cancellation of the Strong mortgage a formal written assignment of it was made to the executrix, in which it was stated that the mortgage was canceled under a mistake as to the title to the mortgaged premises. The bill prays to have the cancellation of this mortgage set aside and declared to be of no effect, and that the complainant be subrogated to the rights of the said Alan H. Strong, trustee.

Robert H. Eastburn, as administrator of Isabelle Eastburn, judgment creditor of the mortgagor, the owner of the equity of redemption, is the only answering defendant. His judgments

were recovered in the supreme court on June 6th, 1899, for $2,-818.47 and $251.56, respectively. Executions were issued after this suit was brought and levies made on "Lot C." There are other subsequent mortgage encumbrances against the property, which are prior in point of time and record to these judgments. The holders are made parties to the suit.

We need look no further than to the allegations contained in the bill filed by Daniel Vliet to demonstrate the error which led to the later confusion. Upon the facts presented by that bill the solicitor made wrong deductions, and it is easily seen how he made the mistake. The description of the prior mortgage on "Lot A" covered the entire tract of eighty-five feet, and excepted by metes and bounds "Lots B and C." It was so described when foreclosed. "Lot B" was described within the lines of its four corners. The Vliet mortgage, which was intended to be foreclosed against "Lot C," also covered the whole tract of eighty-five feet, and the solicitor obviously intending to identify this lot, eliminated it from the operation of the foreclosure proceedings by including it within descriptions intended to except "Lots A and B." The only inference from the conduct of Vliet, the purchaser, and his executrix, taking and holding possession of "Lot C," collecting the rents and paying the interest on prior mortgages, is that they labored under the misapprehension that the description in the sheriff's deed covered that tract and that the latter paid off the Strong and Johnson mortgages under the mistaken notion that she was the owner of the equity of redemption. Against such mistakes, in the absence of gross negligence or intervening equities, this court will grant relief. *Seeley* v. *Bacon, 34 Atl. Rep. 139; Swedesboro Loan and Building Association* v. *Gans, 65 N. J. Eq. 132.* There was no such negligence, nor are there any such equities. The mistake of the draftsman of the bill was due to a misconception of the effect of the exceptive descriptions he employed, and into which, under the circumstances, a careful practitioner might readily have fallen. That of the complainant was a logical sequence. The status of the judgment creditor, Eastburn, can only be changed and advanced if we deny relief. He has no equities in his favor which will permit him to reap the benefit of the complainant's honest mistake.

It is argued that inasmuch as the sheriff's deed to Daniel Vliet did not convey the equity of redemption in "Lot C," that the payments of the two mortgages by his executrix were voluntary, and that she is therefore without standing to a right of subrogation. This proposition is untenable. The suit by Daniel Vliet to foreclose his mortgage was abortive. It was a proceeding *in rem,* minus the *res.* It was entirely nugatory, and left his mortgage unimpaired and a subsisting encumbrance subject to enforcement in a second suit. *Johns* v. *Wilson, 180 U. S. 440; Moulton* v. *Cornish, 138 N. Y. 133.* Therefore, while not the owner of the equity of redemption, the position of Daniel Vliet was, and that of the complainant is, one of mortgagee in possession, and as such mortgagee it was the complainant's privilege to pay off all prior encumbrances and to be subrogated thereto. *Bigelow* v. *Cassedy, 26 N. J. Eq. 557; Barnett* v. *Griffith, 27 N. J. Eq. 201.*

It is also urged that relief should be denied because the complainant was guilty of laches in the bringing of her suit and in its prosecution. The bill was filed April 5th, 1910, shortly after the discovery of the mistake. As to this, there is no serious contention, but the complaint is that the suit has not been diligently prosecuted. There are two answers—one is, that the defendant has not been prejudiced by the loss of testimony or means of proof or changed relation. *Tynan* v. *Warren, 53 N. J. Eq. 313; Lutjen* v. *Lutjen, 64 N. J. Eq. 773; Gerhard* v. *Welsh, 80 N. J. Eq. 203.* No testimony could disturb the proof of the initial mistake as certified by the Daniel Vliet foreclosure bill and upon which this case rests. The other is, that if there has been any delay, the defendant has contributed and consented thereto, or acquiesced therein. He filed his answer out of time, with the consent of the complainant. In November, 1912, after the death of the complainant, he, in writing, consented to two extensions of time for the revival of the cause, and in September, 1913, in writing, consented to a reference to a vice-chancellor and the designation of a day for the trial. He cannot now consistently say that he is aggrieved.

I will advise a decree setting aside the cancellation and restoring the mortgage as a valid lien. A reference will be made to a

master to ascertain the amount due thereon, and on any subsequent liens which the complainant may hold, and further, to ascertain the amount of the rents, issues and profits since the complainant's testator took possession. Credit must be given for the net sum.