## TOWN OF READSBORO v. HOOSAC TUNNEL & W. R. CO.

(Circuit Court of Appeals, Second Circuit. February 9, 1925.)

No. 91.

**1. Covenants ⬅⇒29—Covenant held enforceable by third party.**

A covenant by the grantee of a railroad to perform all contracts "binding" on the grantor, construed and acted upon by the parties for more than 20 years as applying to a contract between the grantor and a town to share equally in the maintenance of a bridge, *held* to create an agreement for the benefit of the town, and enforceable by it, whether or not, as matter of strict construction, the original contract was legally binding on the grantor.

**2. Contracts ⬅⇒215(1)—Contract by railroad company to share in maintenance of bridge held terminated when it was compelled to discontinue use of the bridge.**

A contract between a railroad company and a town to share equally in the maintenance of a bridge, built by them jointly and used by the company and the public, where no time limit was set, *held* to have terminated when the company was compelled to discontinue use of the bridge because it was insufficient to carry modern equipment, and the measure of its further liability *held* to be one-half the cost of placing the bridge in as good condition at that time as when built.

In Error to the District Court of the United States for the District of Vermont.

Action at law by the Town of Readsboro against the Hoosac Tunnel & Wilmington Railroad Company. From the judgment, plaintiff brings error. Reversed, and new trial ordered.

John G. Sargent, of Ludlow, Vt., and Robert E. Healy, of Bennington, Vt., for plaintiff in error.

Frederick J. Dunn, Samuel P. Sears, and McLellan, Brickley & Sears, all of Boston, Mass., for defendant in error.

Before HOUGH and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge. This is an action at law to recover for money expended by the plaintiff in the repair of a bridge across the Deerfield river at the town of Readsboro, Vt. It depends upon a con-

tract executed on October 2, 1888, between the plaintiff and the Deerfield River Company, the predecessor in title of the defendant. The Deerfield River Company was incorporated under the general laws of Vermont on April 2, 1883. Its business, as stated in the articles of incorporation, included "the manufacture, transport, and sale of wood pulp, lumber, and other articles and such other business as is incident thereto at said Readsboro." The contract recited that the selectmen of Readsboro had laid out a highway across the Deerfield river to carry which it was necessary to erect a bridge; that for this object the town purposed to spend $4,000 and the state an added $4,000; that the Deerfield River Company proposed to build a railroad across the bridge to accommodate both parties. Therefore the company agreed to erect the bridge according to agreed specifications and to bear its entire cost above $8,000. Then followed the words on which the suit depends: "The expense of maintaining said bridge shall be borne equally by said town and said Deerfield River Company and their successors. And said Deerfield River Company shall pay all damages to said bridge and approaches that may be occasioned by the said trains. Said Deerfield River Company and their successors shall pay all damages which may be caused by said company's running said trains across said bridge and over said highway."

The company built the bridge and paid half the expenses of its maintenance until April 25, 1892. The Deerfield River Railroad Company was incorporated by special act of the Vermont Legislature in 1890. The defendant is a Massachusetts corporation, incorporated before 1886. On April 25, 1892, the Deerfield River Company conveyed its railroad in Vermont to the Deerfield Valley Railroad Company. On the following 24th of May that company conveyed the same railroad to the defendant. The first deed contained the following covenant: "This conveyance is made subject to all agreements, obligations, and covenants binding on said Deerfield River Company to maintain and permit farm crossings and cattle guards and erect and maintain fences, and to do any and all other acts and things relating to the use and control of said railroad line and property which said Deerfield River Company is under obligation to do as required by law, all of which the grantee is to assume and perform fully and completely." The second deed contained substantially an identical covenant. From that time until the controversies herein arose the expense of repairing the bridge

was shared equally between the town and the defendant.

The defendant operated a narrow gauge railroad over the bridge until July, 1913, at which time it changed the gauge of its whole road, and, as its engineers decided that the bridge was too weak to bear a standard guage equipment, it discontinued the use of the bridge for any purpose, and removed its tracks in 1915. Since 1913 the weight of the equipment of a narrow gauge railroad has so much increased that the bridge would no longer carry even that, and it would be impossible, therefore, without entire rebuilding, for the defendant to use it for any railroad purposes, unless by a reversion to the old narrow gauge. By 1919 the bridge had fallen into serious disrepair, and the town determined, in the interest of its more permanent maintenance, somewhat to change its structure. It called upon the defendant to bear half the expenses of the proposed changes, which the defendant refused, and thereupon it did the work itself. This action resulted.

The items claimed are of two classes: Certain repairs done in 1917, amounting to $143.65, and other and more substantial repairs made in 1919, half of which amounted to $4,770.89. The court below allowed the jury to find for the plaintiff as to the earlier repairs, but took from them the repairs of 1919. These, as we have said, were of more substantial character. A sidewalk was added on the down stream side above a water pipe which the bridge carried. There had been originally a sidewalk on the opposite side, but this had disappeared many years before. Wooden handrails were replaced by steel. "A steel floor system" was substituted for the original wooden one. This comprised both steel stringers running lengthwise of the bridge and steel floor beams across it. Various incidental repairs were also made, such as repainting, repair of the rollers, and the like. The substitution of steel for wood was because of the increased price of the latter, and, indeed, perhaps of the impossibility of securing it. The writ of error was taken out because the District Court had refused to allow the jury to pass upon the repairs of 1919.

[1] The first question is whether there is any contract at all on which the plaintiff may sue. The defendant argues that the original contract of 1888 was ultra vires the Deerfield River Company. We of course agree that, if so, that company could make no valid contract. Central Trust Co. v. Pullman Palace-Car Co., 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55. The rule seems to be the same in

Vermont. Metropolitan Exchange v. Lyndonville Nat. Bank, 76 Vt. 303, 57 A. 101. We think it open to argument whether the charter of the Deerfield River Company did not give it the right to make the contract as an incident to its charter purposes. These expressly included the right to transport its pulp and lumber, which, being heavy and bulky, might properly enough be carried by a railroad. Doubtless it had no incidental power to carry passengers as well; but we are not concerned with the use which the company made of the railroad, but only whether it had the right to make the contract. Since that was to maintain a bridge for a railroad, and since a railroad, at least when limited to the bridge, might be used in the transportation of pulp and timber, we think it plausible to argue that the contract was within its powers. It might not be enough to invalidate it that it was in fact part of a more extensive venture, which taken as a whole was ultra vires. If so, the deeds of that company to the Deerfield River Company, and of the latter to the defendant, were valid assumptions of a valid contract. The purpose of those agreements was plain enough, and the parties have practically construed them in accordance with their normal meaning over a number of years. In such a situation a bill in equity would lie against the defendant under the rule in Goodyear v. Dancel, 119 F. 692, 56 C. C. A. 300 (C. C. A. 2). As no point was made of the form of action, and it is too late now to raise it, we only pause to notice that this action was at law.

However, it is not necessary for us to hold that the contract was intra vires the Deerfield River Company, and we do not so hold. Even if this be not true, we think the covenants in the two following deeds created an agreement for the benefit of the plaintiff, of which it could avail itself. Hendrick v. Lindsay, 93 U. S. 143, 23 L. Ed. 855; Penn. Co. v. N. Y. City Ry., 198 F. 721, 747, 117 C. C. A. 503 (C. C. A. 2); Williston, §§ 357, 368. We do not forget that in each deed the grantee undertakes to assume only those obligations which are "binding" upon the grantor, and that strictly the contract was binding on the Deerfield River Company only in case it was intra vires. Yet it is plain, from the subsequent conduct of the parties, that by that language they meant to include the contract in suit among the obligations of the Deerfield River Company which its two successors assumed. We think it too late now to raise the question whether as matter of strict construction the Deerfield River Company was originally bound. Hence, even though the original contract was ultra vires, an action lies as upon a new promise made for the benefit of a third person, and whether at law or in equity, in view of the record, which does not raise that question, we shall not inquire. We think that a cause of action or a cause of suit existed.

[2] The next question is of the duration of the defendant's obligation, and this necessarily goes back to the original contract. That was in terms unlimited in time, and the plaintiff apparently reasons that the defendant is bound forever to pay one-half of the expenses of maintenance. This seems to us untenable. Had the parties expressed the intention to make a promise for perpetual maintenance, we should, of course, have nothing to say; their words would be conclusive. But they did not, and, as no time is expressly fixed, we must look to the circumstances to learn what they meant. Their purpose is pretty evident. The railroad was to have the use of the bridge, and in using it would help wear it out. It was reasonable, therefore, that it should share the expenses of its upkeep. But, if at any time that use ceased, plainly there was no reason, either in good sense or in justice, that it should continue to pay for what it got no use of, and what it no longer helped to destroy. The purpose can hardly have been to supply the town with a bridge forever. This we think was the measure of the original covenant. Carnig v. Carr, 167 Mass. 544, 46 N. E. 117, 35 L. R. A. 512, 27 Am. St. Rep. 488; McKell v. C. & O. R. R. Co., 175 F. 321, 96 C. C. A. 109, 20 Ann. Cas. 1097 (C. C. A. 6); Williston, § 38.

Hence the question arises as to when the defendant legally abandoned the use of the bridge. The statutes of Vermont (G. L. §§ 5045, 5050) gave jurisdiction to the Public Service Commission which we should suppose would cover the case at bar, though no decision of that state has passed upon the question. Nevertheless, as a matter strictly inter partes, we do not hesitate to say that in 1915 the defendant unequivocally and absolutely abandoned its road and terminated its right to use the bridge. Louisville Trust Co. v. Cincinnati, 76 F. 296, 22 C. C. A. 334 (C. C. A. 6); Townsend v. Michigan Central R. R., 101 F. 757 (C. C. A. 6), 42 C. C. A. 570; D. & R. G. R. R. v. Mills, 222 F. 481, 138 C. C. A. 77 (C. C. A. 8); Stafford v. Aurora Rys. Co., 228 Ill. 269, 474, 81 N. E. 1005; Enfield v. Ward, 190 Mass. 314, 76 N. E. 1053; Roby v. N. Y. Cent. & H. R. R. Co., 142 N. Y. 176, 36 N. E. 1053; Beattie v. Carolina Cent. R. Co., 108 N. C. 425, 12 S. E. 913.

The plaintiff, however, argues that, since the defendant has a public franchise to operate a railroad over the bridge, it may not lawfully abandon it without the consent of the state. People v. Albany & Vt. R. Co., 24 N. Y. 261, 82 Am. Dec. 295; Thompson v. Schenectady R. Co., 178 N. Y. 102, 115, 70 N. E. 213, followed in our own decision in the same case, Thompson v. Schenectady R. Co., 131 F. 577, 65 C. C. A. 325. We agree that it could not, without the consent of the state, abandon any part of its franchises, keeping the rest. How far the state's inaction for 10 years may be said to be such a consent we do not find it necessary to hold, because we distinguish between the franchise of the road and the right inter partes to use the bridge. As we have said, it appears in evidence without contradiction that the bridge was incapable of carrying either a standard gauge road or even a modern narrow gauge road. It may of course be that the state of Vermont will compel the defendant to continue to exercise its franchise by building a new bridge altogether; if so, we have naturally nothing to say, because it will not be within the contract in suit. But we do say that as to this bridge the defendant's use is in the nature of things at an end. It seems to us fantastic to consider the possibility that the state of Vermont may require the defendant to resume the operation of its franchise, not only by a narrow gauge road, but by one which was the standard in 1913. The bridge will hold nothing else, and it is plain that the defendant can never be called on to exercise its franchise in the only way which could make it liable under the contract. That touched only the bridge as it is, and that bridge the defendant can never use, and could never use after 1915, when it took up its rails.

Hence we agree with the learned judge that the expenses of the changes in 1919 were not a proper charge upon the defendant. Avowedly these extended to the future. They were made because it was wisely thought more economical to make permanent repairs than repeatedly to cobble up the old structure. Nevertheless we think the evidence sufficient to show that the defendant has not fully discharged its obligation. We take the year 1915 as the date of final abandonment, but the defendant's obligation endured until that time, and it was then bound to restore the bridge to as good a condition as it was when the contract was made; that is to say, we hold that the measure of the defendant's obligation is one-half of that sum which in 1915 would have sufficed to put the bridge in the same condition in which it was in 1888, not including such permanent repairs as the plaintiff made in 1919 in the interest of eventual economy. These necessarily looked to a future, for which the defendant was no longer responsible.

Some such items were proved, though we shall not try now to enumerate them. Probably they will not turn out to be very substantial, and it is greatly to be hoped that the parties may agree upon them without the expense of another trial.

Judgment reversed, and new trial ordered in accordance with this opinion.