## In re GUBELMAN et al.

## Petition of MUNTEAN et al.

(Circuit Court of Appeals, Second Circuit. July 7, 1926.)

No. 358.

I. Bankruptcy ⟵318(I)—Purchaser of foreign draft from inland bank held to have no claim against bankrupt estate of New York bank, which arranged to protect draft pursuant to a "drawing service" arrangement with inland bank.

Where New York bank arranged with inland bank to pay drafts drawn by inland bank on foreign banks, purchaser from inland bank of foreign draft, which was not paid because of intervening bankruptcy of New York bank, had no claim against bankrupt estate, either on theory that drawing service contract was for his benefit or on theory of unjust enrichment.

2. Contracts ⟵187(I).

Under federal decisions, third person can enforce promisor's obligation only when he is sole beneficiary, and when parties intended him as primary party in interest.

Petition to Revise Order of and Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of Oscar L. Gubelman and others, individually and as copartners trading as Knauth, Nachod & Kuhne; Middleton S. Borland, trustee. An order disallowing the claims of Toma Muntean and others was affirmed by the District Court, and claimants petition to revise and appeal. Order affirmed.

See, also, 6 F.(2d) 1020; 9 F.(2d) 486; 9 F.(2d) 1017; 10 F.(2d) 926; 10 F.(2d) 935; 13 F.(2d) 732.

Kremer & Leavitt, of New York City (Samuel Leavitt, of New York City, of counsel), for appellants.

Rosenberg & Ball, of New York City (Ralph F. Colin, of New York City, of counsel), for trustee appellee.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The appellants, with others, have filed claims against the estate of the bankrupts, contending that they are creditors and entitled to share in the distribution of the estate. On June 16, 1923, Knauth, Nachod & Kuhne were petitioned in bankruptcy. The Louis Di Santis Bank of Canton, Ohio, prior to that date, had an arrangement with the bankrupts by the terms of which this bank and others in their own name could draw drafts or money orders on foreign banks, where such domestic banks had no balance, and the drafts would be protected and paid from the bankrupts' balance in such foreign banks. This is referred to as a drawing service. In brief, the bankrupts would supply the inland domestic banks with forms of drafts, and on request from one of its customers the inland bank would sell and issue a draft for a foreign currency amount, drawn on a foreign bank where the drawer had no balance. The agreement provided the "drafts must be signed in the name of the issuing bank." On advices, then, to the bankrupts of the issuance of the draft, the bankrupts agreed that "upon receipt of advice of draft, accompanied by adequate funds payable at par in New York, we shall promptly forward our advice of the same and provide the drawee with funds sufficient for the payment of the draft abroad. * * *" It further provided that "under this arrangement our correspondents in this country act as principals, and issue drafts in their own names, our name not appearing thereon. In other words, we are employed merely as the agents of the drawers, for the purpose of advising the issue of their drafts and providing the drawee banks with sufficient funds to cover their payment."

[1] The draft involved in this proceeding was issued pursuant to the terms of this drawing service referred to. It was drawn on the Banca Albina at Sibiu, Roumania, for Lei 290,000, payable to the order of Muntean, for which he paid $1,638.50 to the Louis Di Santis Bank. The Louis Di Santis Bank had no balance with the drawee, but paid the bankrupts $1,638.50 under the terms and in a form supplied to it by the bankrupts. Acknowledgment of the receipt of this money was made by the bankrupts in sending it by way of a postal card receipt. It in turn advised the Banca Albina to pay the draft and charge the same to the bankrupts' account. When the draft was received abroad, it was not honored, for in the meanwhile a receiver in bankruptcy was appointed. The balance standing to the credit of the bankrupts, excepting that portion of the balance which has been attached by the creditors of the bankrupts, has been turned over to the receiver. The receiver has not paid the amount of the draft in question although payment was demanded. We are concerned on this appeal with the claim of Muntean only. A stipulation has been entered into between the other parties that the appellants would abide by the determination arrived at in consideration of the Muntean claim.

[2] On these facts, the appellants contend that they have valid claims under the third party beneficiary doctrine. The argument is that the bankrupts, having received the funds for transmission and payment to a designated beneficiary, are liable to the appellants for failing to make the payment. But the contract of engagement of the bankrupts was with the Louis Di Santis Bank. The appellants are not beneficiaries under the stipulations of this contract. A third person may benefit by a contract, if promises are made where the promisee has no pecuniary interest in the performance of the contract, his object being to enter into it for the benefit of such third person, or where promises are made where the promisee seeks indirectly to discharge an obligation of his own to a third person by securing from the promisor a promise to pay his creditor. These are referred to in Williston on Contracts, vol. 1, § 356. The appellants' theory is based upon the New York doctrine announced in Lawrence v. Fox, 20 N. Y. 268. The rule that may be formulated under the federal decisions permits a third person not a party to a contract to enforce the promisor's obligation only where he is the beneficiary solely interested in the promise, and in such case it must appear that the parties intended to recognize the third person as a primary party in interest. It is insufficient if the third person is a mere beneficiary, having no direct interest in the performance of the stipulations of the parties. German Alliance Ins. Co. v. Homewater Co., 226 U. S. 220, 33 S. Ct. 32, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000; Constable v. Natl. S. S. Co., 154 U. S. 51, 14 S. Ct. 1062, 38 L. Ed. 903; Nat. Bank v. Grand Lodge, 98 U. S. 123, 25 L. Ed. 75; Penn. Steel Co. v. N. Y. City Ry. Co., 198 F. 721, 117 C. C. A. 503. In National Bank v. Grand Lodge, supra, the Supreme Court said, in speaking of the facts there involved:

"They may have had an indirect interest in the performance of the undertakings of the parties, as they would have in an agreement by which the lodge should undertake to lend money to the association, or to contract to buy its stock to enable it to pay its debts; but that is a very different thing from the privity necessary to enable them to enforce the contract by suits in their own name. * * * But where a debt already exists from one person to another, a promise by a third person to pay such debt being primarily for the benefit of the original debtor, and to relieve him from liability to pay it (there being no novation), he has a right of action against the promisor for his own indemnity; and if the original creditor can also sue, the promisor would be liable to two separate actions, and therefore the rule is that the original creditor cannot sue."

This court pointed out in Pennsylvania Steel Co. v. N. Y. City Railway Co., 198 F. 721, 117 C. C. A. 503, that in order to recover it is essential that the third person be the real promisee; that the promise be made to him in fact, although not in form. "It is not enough that the contract may operate to his benefit. It must appear that the parties intend to recognize him as the primary party in interest and as privy to the promise."

The authorities referred to by the appellants do not support their position under the facts here presented. We allowed a recovery in Penn. Cement Co. v. Bradley Cont. Co., 7 F.(2d) 823, because it appeared that the third party was the sole beneficiary or person solely interested in the promise. And recoveries have been allowed in equity where property came into the promisor's hands where in equity it belonged to third parties, as in the mortgage assignment cases. Johns v. Wilson, 180 U. S. 440, 21 S. Ct. 445, 45 L. Ed. 613; Union Life Ins. Co. v. Hanford, 143 U. S. 187, 12 S. Ct. 437, 36 L. Ed. 118; Keller v. Ashford, 133 U. S. 610, 10 S. Ct. 494, 33 L. Ed. 667. Or where rights accrued by reason of public contract, as in Town of Readsboro v. Hoosac Tunnel, etc. (C. C. A.) 6 F.(2d) 733. In De Cicco v. Schweizer, 221 N. Y. 431, 117 N. E. 807, L. R. A. 1918E, 1004, Ann. Cas. 1918C, 816, promises were made to pay sums of money to third parties, which, in each instance, were based upon a blood relationship between the obligor and the beneficiary. Recoveries were had because they were each a "donee beneficiary." In Gardner v. Equitable Bldg. (C. C. A.) 273 F. 441, 17 A. L. R. 431, the question presented was the principal's obligation after adoption of the agent's contract. In Fosmire v. Nat. Surety Co., 229 N. Y. 44, 127 N. E. 472, the right of recovery of a third party was upon the theory that the contracting parties had in mind "an intention to create a cause of action in their favor."

Nor may recovery be had upon the theory of an unjust enrichment. The Louis Di Santis Bank has a claim against the bankrupt's estate for breach of the bankrupt's contract with it. The appellants are strangers to the transaction. The appellants have a full remedy against the inland bank, the Louis Di Santis Bank.

Even the New York rule, as announced in

Lawrence v. Fox, 20 N. Y. 268, and as somewhat limited in Vrooman v. Turner, 69 N. Y. 280, 25 Am. Rep. 195, is distinguishable, because the bankrupts here made no promise to any one that they would pay the obligation of the appellants, and their offer to the inland bank, which finally was consummated in a contract, was made before the obligation of the bank to the appellants arose. Under the terms of the drawing service, the bankrupts made a continuing offer to the Louis Di Santis Bank that, if the latter would issue its own draft under the terms of its service, the bankrupts would see that it was paid by a transfer of credit or otherwise. The bankrupts at no time undertook to make a payment to the appellants. What they did was to effectuate a service for the Louis Di Santis Bank so that the money would be available for a draft drawn by that bank on a foreign bank.

In Re Gubelman, Ex parte First National Bank of Trinidad, 13 F.(2d) 732, handed down to-day, we decided the drawer, having taken up a draft drawn under the same "service contract," stood in the position of an equitable assignee. It is true that this depended upon the drawer's subrogation to the holder's right, but the facts were not the same as here. There it appeared that before bankruptcy, the drawee had received the bankrupts' advice and had actually transferred the credit to the account of the draft. Here it appears only that the bankrupts had mailed the advice, and it does not even appear that they had an adequate balance with the drawee at that time or later. We are not called on to decide whether these are vital distinctions, because the case at bar was not argued on any such theory.

Order affirmed, with costs.

ROGERS, Circuit Judge, concurred in these views, but, owing to his absence, has not read this opinion.