# WOLFE v. MURPHY.

---

BILLS AND NOTES; PLEADING; PARTIES; GUARDIAN; MORTGAGES; ASSUMPTION OF DEBT; EXTENSION OF TIME; EQUITABLE DEFENSE.

1. A declaration on a promissory note alleging that it was indorsed "to the plaintiff, who is now the owner and holder thereof," and an affidavit of merit stating that "as such guardian this affiant is the owner and holder" of the note, and that it was indorsed to him "guardian as aforesaid," sufficiently allege the plaintiff's title to sue, and do not amount to an allegation that the note was transferred to him "as guardian," those words being merely *descriptio personæ.*

2. A guardian who is the owner and holder of a note for the use and benefit of his ward may bring an action thereon in his own name. (Citing *National City Bank* v. *Bankers Trust Co.* 37 App. D. C. 553.)

3. A mortgagor does not, by virtue of an agreement with his grantee whereby the latter assumes the debt, cease to be a principal and become a surety as to the mortgagee, so as to be released by an extension of time of payment given to the grantee by the mortgagee, even though given with knowledge of the grantee's assumption of the debt. (Mr. Justice ROBB dissenting.)

4. A mortgagor cannot urge, in an action against him on the mortgage note, as an equitable defense under the Act of Congress of March 3, 1915 (38 Stat. at L. 956, chap. 90, Comp. Stat. 1916, sec. 1251), that because of an extension of time of payment granted by the mortgagee to his grantee, who assumed the debt, and the consequent failure of the mortgagee to foreclose when the note became due by its original terms, he was damaged, and is entitled to have his damages considered in determining the amount due upon the note; since he did not become a surety as to the mortgagee by the assumption of the debt by his grantee.

No. 3059.   Submitted December 10, 1917.   Decided February 4, 1918.

HEARING upon an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in an action on a promissory note.                                   *Affirmed.*

The COURT in the opinion stated the facts as follows:

Richard S. Wolfe was sued by Charles J. Murphy, guardian of Raymond F. Gheen, a minor, upon a promissory note under seal, which was secured by a mortgage on real estate given by him to one Johnson. He filed an affidavit of defense, which was found by the court to be insufficient, and judgment was entered against him under the 73d rule of the lower court.

After he gave the mortgage, he conveyed the real estate to one De Lashmutt, who assumed and agreed to pay the note. A few days before the note became due, De Lashmutt and the then holder of the note, Laura Green, entered into an agreement whereby payment was extended for three years and guaranteed by the former. The note not having been paid, Murphy, claiming to be the owner and holder of it, brought suit against Wolfe, who defended on the ground that Murphy sued as guardian of a minor; that as such he had no right to maintain the action; and that the suit, if commenced at all, should have been instituted in the name of the minor by his next friend or guardian; but assuming it was properly brought, the agreement between De Lashmutt and Green, through whom Murphy claimed title, when considered in connection with the fact that De Lashmutt, in the deed of conveyance from Wolfe to him,

had assumed and agreed to pay the debt, had the effect of making De Lashmutt the principal and Wolfe the surety on the note; and, since Wolfe was surety, the extension, given without his knowledge or consent, worked a novation and released him from his obligation to pay; but, if not released, he was at least damaged by the extension, and is entitled in equity to have the damages considered in determining the amount which he owes. Thus we have three questions before us: First, whether Murphy could maintain the action; second, if he could, whether Wolfe had been released; and, third, if not released, has defendant an equitable claim for damages. They shall be treated in their order.

*Mr. Edwin C. Dutton* and *Mr. John Ridout* for the appellant.

*Mr. Michael J. Colbert* and *Mr. Henry H. Glassie*, for the appellee, in their brief cited:

*Murphy* v. *Wolfe*, 44 Wash. L. Rep. 579; *Keller* v. *Ashford*, 133 U. S. 610; *Willard* v. *Wood*, 135 U. S. 309; *James* v. *Day*, 37 Iowa, 164; *Waters* v. *Hubbard*, 44 Conn. 340; *Shepherd* v. *May*, 115 U. S. 505; *Robertson* v. *Stuhlmiller*, 93 Iowa, 326; *Denison University* v. *Manning*, 65 Ohio St. 138; *Iowa L. & T. Co.* v. *Haller*, 119 Iowa, 645; *Gray* v. *Grand Trunk & W. R. Co.* 156 Fed. 736; *Am. Sec. & T. Co.* v. *Ferrero*, 45 App. D. C. 84; *Biddle* v. *Pugh*, 59 N. J. Eq. 480; *Crowell* v. *Hospital*, etc., 27 N. J. Eq. 650; *Bafer* v. *Hanie*, 163 N. C. 588; *Pike* v. *Brown*, 7 Cush. 133; *Foster* v. *Irey*, 2 Ont. L. Rep. 480; *Nat. City Bank* v. *Bankers Trust Co.* 37 App. D. C. 553; *Green* v. *McAuley*, 38 L.R.A. 308.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

First. The declaration opens thus: "The plaintiff, Charles F. Murphy, guardian of Raymond F. Gheen, a minor," and then alleges that the note was indorsed "to the plaintiff, who is now the owner and holder thereof." In the affidavit of merit

filed by the plaintiff, it is said: "That as such guardian, this affiant is the owner and holder of a certain promissory note," and the payee of the note indorsed the same to the plaintiff, guardian as aforesaid, who is now the owner and holder thereof." This is not denied. In his affidavit of defense, Wolfe denies that the said note was transferred "to the plaintiff, as guardian of Raymond F. Ghcen." But Murphy had not alleged that the note was transferred to him "as guardian," but "indorsed to him, guardian as aforesaid." The words, "guardian as aforesaid," are merely *descriptio personae*, and do not indicate the capacity in which he received and holds the title conveyed by the transfer. Under the 73d rule of the lower court, which requires the defense to be stated specifically and "in precise and distinct terms," this was not a denial of the allegations either of the declaration or of the affidavit of merit. Besides, Wolfe in his amended affidavit says that "the plaintiff herein became the holder of said note." This admission and the allegations aforementioned, when correctly understood, are to the effect that Murphy was the owner and holder of the note for the use and benefit of his ward, and bring the case within the rule of *National City Bank* v. *Bankers Trust Co.* 37 App. D. C. 553, rather than that of *Baltimore & P. R. Co.* v. *Taylor*, 6 App. D. C. 259. See also *Lum* v. *Robertson*, 6 Wall. 277–279, 18 L. ed. 743, 749; *Greene* v. *McAuley*, 70 Kan. 601, 68 L.R.A. 308, 79 Pac. 133.

Second. Was the defendant released by the extension of the time of payment?

(a) We first inquire into the effect of the agreement by De Lashmutt to assume and pay the note. Wolfe says it made De Lashmutt the principal debtor, and him his surety. This was undoubtedly the result as between Wolfe and De Lashmutt (*Union Mut. L. Ins. Co.* v. *Hanford*, 143 U. S. 189, 36 L. ed. 118, 12 Sup. Ct. Rep. 437), but how was it with respect to the mortgagee? In some jurisdictions it is held that the change is effected as to the mortgagee also, but even there, it never takes place until the mortgagee acquires knowledge of the arrangement between the grantor and grantee. The Supreme Court of the United States in the *Hanford Case*, re-

ferring to the rule in those jurisdictions, such as New York, Illinois, and other states, says: "The grantee, as soon as the mortgagee knows of the arrangement, becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable to the latter; and the relation of the grantee and the grantor, towards the mortgagee, as well as between themselves, is thenceforth that of principal and surety for the payment of the mortgage debt." In the same case, it is said: "The rule applies whenever the creditor gives time to the principal, knowing of the relation of principal and surety, although he did not know of that relation at the time of the original contract" (citing several cases). *Knowledge,* then, of the relation is essential. Unless it exists, the extension does not work a release of the surety. Indeed, appellant, in closing his argument upon this point, cites a note to *Fanning* v. *Murphy,* 4 L.R.A.(N.S.) 666, which says in effect that the weight of authority is in harmony with this doctrine. In the present case there is nothing to show that Laura Green, at the time she granted the extension, had any knowledge whatever of the arrangement between Wolfe and De Lashmutt. Defendant in his second plea says she did, but makes no mention of it in the affidavit of defense, and it is by the statements of the latter we must determine, under the rules of practice prevailing here, the sufficiency of his defense. Nor was Laura Green charged with knowledge of the arrangement by reason of the fact that it was embodied in the recorded deed from Wolfe to De Lashmutt, because, among other reasons, she was not bound to take notice of any document affecting the title to the land, which was filed subsequently to the time when the mortgagee acquired an interest in the property. *Rannels* v. *Rowe,* 74 C. C. A. 376, 145 Fed. 296; 24 Am. & Eng. Enc. Law, 146. The defendant then did not bring himself within the doctrine of the cases which seem most favorable to him.

(b) But though it were otherwise with respect to the necessity of knowledge on the part of the mortgagee, it would be immaterial so far as this case is concerned, because, under the Federal rule, which is binding on us, the mortgagor does not, by virtue of an arrangement with his grantee according to

which the latter assumes the debt, cease to be a principal and become a surety on the note, as to the mortgagee. In the *Hanford Case,* supra, the Supreme Court of the United States said: "By the settled law of this court, the grantee is not directly liable to the mortgagee, at law or in equity;" and, added: "In that view of the law, there might be difficulties in the way of holding that a person who was under no direct liability to the mortgagee was his principal debtor, and that the only person who was directly liable to him was chargeable as a surety only, and consequently that the mortgagee, by giving time to the person not directly and primarily liable to him, would discharge the only person who was thus liable. [Citing] *Shepherd* v. *May,* 115 U. S. 505, 511, 29 L. ed. 456, 458, 6 Sup. Ct. Rep. 119; *Keller* v. *Ashford,* 133 U. S. 610, 624, 33 L. ed. 667, 673, 10 Sup. Ct. Rep. 494." In the Shepherd Case, it was said: "And if Walker [the grantee] had expressly promised May [the mortgagee] to pay the debt, that would not, without the assent of May, have converted Shepherd from a principal debtor into a surety merely." And in the *Keller Case* it was held that such an agreement [the one assuming the debt] does not, without the mortgagee's consent, put the grantee and mortgagor in the relation of principal and surety towards the mortgagee, so that the latter, by giving time to the grantee, would discharge the mortgagor. See also *Cucullu* v. *Hernandez,* 103 U. S. 105–115, 26 L. ed. 322–326.

(c) Nevertheless, it is urged with much earnestness that by the extension Laura Green recognized the arrangement between Wolfe and De Lashmutt, and thereby created the former a surety. If this be true, the same act by which she transformed him from a principal into a surety released him from all liability as surety. We cannot assent to such a proposition, because it is unreasonable, and we are admonished by courts and text-writers not to adopt a construction of either conduct or documents which involves an absurdity. *People* v. *New York C. R. Co.* 24 N. Y. 485–488; Story, Const. §§ 400–405; Cooley, Const. Lim. 69–70.

Moreover, the extension was granted, not at the time of the transfer from Wolfe to De Lashmutt, but nearly two years

thereafter, or nine days before the note became due. As we have shown, Laura Green had no knowledge of the agreement between Wolfe and De Lashmutt at the time she granted the extension. She cannot be charged correctly with recognizing and acquiescing in an arrangement of which she knew nothing. *Pence* v. *Langdon,* 99 U. S. 578, 25 L. ed. 420, 13 Mor. Min. Rep. 32.

(d) The Supreme Court of the United States has held in several instances that an extension of payment under circumstances similar to those in the present case did not release the maker of the note. *Cucullu* v. *Hernandez,* supra, is a case in point. Cucullu gave his notes to Villavaso, secured by a mortgage on a plantation. Afterwards he sold the plantation to Walker, who assumed to pay the notes to Villavaso. The latter, without the consent of Cucullu, agreed with Walker for an extension of the time for the payment of the notes. This, Cucullu asserted, released him, because, as he averred, he became Walker's surety by virtue of the assumption agreement between him and the latter. The court rejected his contention and said: "It cannot, we think, be reasonably claimed that a debtor is converted into a surety by his creditor's acceptance of an additional promise from a third person to pay the debt due him by his debtor. There is no element of suretyship in such a contract, unless it be that the additional debtor might be regarded as surety for the original debtor. The relation between the creditor and the original debtor is not changed by such an arrangement." In *Shepherd* v. *May,* supra, Shepherd gave May his note and secured it by a trust deed on real estate. Before the maturity of the note, Shepherd conveyed the lot to Walker. May, at the request of Walker, gave three extensions, two for a year each and one for nine months, on Walker's agreement to pay interest at the rate specified in the note. There was no evidence that Shepherd consented to these extensions. Walker having failed to pay the interest on the last extension, suit was brought by May against Shepherd upon the note. Stating Shepherd's defense, the court said: "The first contention of the plaintiff in error is that, by reason of the transaction stated in the bill of exceptions, Walker became

the principal debtor of May, and Shepherd became his surety; and as May, upon a valid contract with Walker, extended the time for the payment of the note without the consent of Shepherd, the latter was thereby discharged." Answering this, it held that "the only way in which Walker could become the principal debtor of May, and Shepherd the surety, was by the mutual agreement of all three. There is no proof of any such agreement. It follows that, as the relation of principal and surety did not exist between Walker and Shepherd, the latter was not discharged from his liability to May by the contract of May with Walker to extend the time for the payment of the money due on Shepherd's note." See also *James* v. *Day,* 37 Iowa, 164; *Walers* v. *Hubbard,* 44 Conn. 340: *Robertson* v. *Stuhlmiller,* 93 Iowa, 326, 61 N. W. 986; *Denison University* v. *Manning,* 65 Ohio St. 138, 61 N. E. 706; *Iowa Loan & T. Co.* v. *Haller,* 119 Iowa, 645, 93 N. W. 636. It would seem that, under these decisions of the Supreme Court of the United States, the extension granted to De Lashmutt did not release Wolfe, even if Laura Green knew of the assumption of the debt by De Lashmutt at the time she granted the extension.

Much stress is laid by the appellant on certain expressions found in *Keller* v. *Ashford,* 133 U. S. 610, 33 L. ed. 667, 10 Sup. Ct. Rep. 494, to the effect that a payee "who has in no way acted on the faith of, or otherwise made himself a party to, the agreement of the mortgagor's grantee to pay the mortgage," is not affected thereby. It is urged that the payee in the present case did act on the faith of the agreement between Wolfe and De Lashmutt, or at least made herself a party to it. We have already shown that she did neither, because she had no knowledge of the existence of the agreement. Therefore this language does not fit her case. But if we grant she did have knowledge, there is nothing in the words quoted which warrants the argument drawn from them by the appellant. In that case Thompson gave several notes secured by mortgages on land, which he subsequently conveyed to Ashford, who assumed payment of the debt. One of the notes not having been paid when it became due, Keller, who then held it, brought action directly against Ashford upon his agreement to pay.

304     WOLFE *v.* MURPHY.

Opinion of the Court.     ' [47 App.

The court, in denying him relief, said: "The promise of Ashford was to Thompson, and not to the mortgagees, and there was no privity of contract between them and Ashford. The consideration of the promise moved from Thompson alone. The only object of the promise was to benefit him, and not to benefit the mortgagees or other encumbrancers; and they did not know of or assent to the promise at the time it was made, nor afterwards do or omit any act on the faith of it. It is clear, therefore, that Thompson only could maintain an action at law upon that promise." The court, when it spoke of the mortgagees not acting on the faith of the agreement, was meeting the argument that they had some rights by virtue of that agreement, to which Keller had succeeded. The court said they had none, since they did not act upon it or make themselves a party thereto. See also *Shepherd* v. *May,* 115 U. S. 505–511, 29 L. ed. 456–458, 6 Sup. Ct. Rep. 119. If, therefore, the extension of the time by the creditor upon an agreement with the grantee, Ashford, did not make the former a party to the agreement of assumption, or constitute such a reliance by him upon it as to make the grantee principal on the note so that the creditor could sue him at law, a like agreement in the present case did not make De Lashmutt a principal so that Green could have sued him at law; and, not being a principal, Wolfe was not his surety, for there cannot be a surety without a principal. *American Bonding Co.* v. *Pueblo Invest. Co.* 9 L.R.A.(N.S.) 557, 80 C. C. A. 97, 150 Fed. 17, 10 Ann. Cas. 357; 32 Cyc. 23 B.

An extract from a decision of Chief Justice Alvey, when on the Maryland court of appeals, in *Chilton* v. *Brooks,* 72 Md. 554, 20 Atl. 125, is pointed to with much confidence as showing conclusively that the *Keller Case* is not open to the construction which we have placed upon it. The learned jurist in that decision gave a quotation from another case, to the effect that where the mortgagor, after giving the mortgage, conveyed the land and later paid the debt, voluntarily or by compulsion, he was thereby "substituted to the mortgaged security as it originally existed, with the right to proceed immediately against the land for his indemnity;" and then added that the

conclusion deduced in the *Keller Case* was quite in harmony with this doctrine. But this had no bearing upon what we are considering in the present case. It deals with the right of the mortgagor under certain circumstances to proceed against the land, not with the contention, here urged, that the mortgagor under the facts disclosed ceased to be a principal and became merely a surety as to the creditor, and that, too, without the latter's consent, or even knowledge. Everything in the reasoning of the decisions of the Supreme Court of the United States upon the subject absolutely excludes the idea that the grantor becomes a surety as to the creditor in a case like the one before us.

Whether, therefore, we consider the first class of authorities, or the second,—the Federal,—the outcome must be the same. Under the former, the failure by the appellant to show that Green knew of the assumption of the debt by De Lashmutt at the time she granted the extension renders unavailable his claim that, because he was a surety of De Lashmutt, she released him by the extension. And according to the latter, which are controlling, even though he had shown such knowledge on her part, he could not succeed, because he was not as to her a surety.

Third. Finally it is urged as an equitable defense, under the Act of Congress of March 3, 1915, that because of the extension, and the consequent failure to foreclose when the note became due by its original terms, the defendant was damaged, and is entitled to have his damages considered in determining the amount due upon the note. But he, not being a surety, has no right to complain on that score. The holder of the note was not obliged to foreclose. He could, as he did, pursue his remedy at law. Jones, Mortg. 6th ed. sec. 1220. When the note became due, defendant could have paid it and then looked for reimbursement to De Lashmutt upon his agreement of assumption. The extension, to which defendant was not a party, did not bind him, and could not in any way affect his rights against De Lashmutt. He had precisely the same rights after the extension as he had before. *Denison University v. Manning,* 65 Ohio St. 138–151, 61 N. E. 706. If, therefore, he

did not avail himself of his right to pay the debt and then proceed against De Lashmutt, but instead awaited action by the holder of the note, during which time, as he asserts, the property securing the debt greatly depreciated, the fault was his, and he is not entitled to any relief on that account against the appellee. The decisions which appellant cites in support of his argument upon this point proceed upon the theory that the mortgagor, by reason of the assumption of the debt by his grantee, became the creditor's surety, but, as we reject that rule, the cases are not applicable.

The judgment of the court below is right and it is affirmed, with costs.                                                  *Affirmed.*

Mr. Justice ROBB dissenting:

Plaintiff, appellee here, declared upon a promissory note under seal, dated March 10, 1910, signed by the defendant Richard S. Wolfe, appellant here, and payable two years after date to the order of one Harold L. Johnson. The declaration further set forth that "on the 1st day of March, 1912, one Laura Green, then the holder of said note, agreed in writing with the defendant Thomas J. De Lashmutt, then the owner of the property upon which said note was secured, to extend the time of the payment of said note to March 10, 1915." The note was attached to and made a part of the affidavit of merit. It is headed, "Coupon Bond Secured by Deed of Trust on Real Estate," and on the margin thereof is, "Secured by Deed of Trust (rec. deed book No. 123, p. 177) on brick dwelling, and lot 70x100 ft. on Columbia turnpike situated in Arlington district, Alexandria county, Virginia." In addition to indorsements of interest payments, there appears the following indorsement:

                         Washington, D. C., March 1, 1912.

The time of payment of this note is extended to March 10, 1915, with interest thereon at the rate of 6 per centum per annum, payable semiannually. Said note and deed of trust securing the same are to remain otherwise unqualified and in

full force; and the payment of this note is hereby guaranteed without demand, notice, or protest.

(Signed) Thos. J. De Lashmutt,
Present Owner of Property.
Mrs. Laura Green,
Holder of Note.

Defendant demurred to the declaration upon the ground that upon its face plaintiff had stated no cause of action. The demurrer was overruled, whereupon plaintiff filed four pleas, in the second of which it is averred that De Lashmutt purchased the mortgaged property and agreed to pay the indebtedness secured by said deed of trust; that with full knowledge of these facts Laura Green, the then holder and owner of the mortgage note, without the knowledge or consent of the defendant and for a valuable consideration, extended the time of payment of said note, and that plaintiff took the note subsequent to the extension and with full knowledge.

In the fourth plea, interposed "by way of equitable defense as provided by statute" (see sec. 274b, Act of March 3, 1915, 38 Stat. at L. 956, chap. 90, Comp. Stat. 1916, sec. 1251b) the facts set forth in the second plea are reiterated, and it is further alleged that in equity and good conscience defendant is entitled to have the real estate security exhausted before attempt is made to enforce any liability against him; "that said real estate has never been sold under said deed of trust, but on the contrary, although said note originally fell due March 10, 1912, the said deed of trust securing the same was never foreclosed, but the said real estate has been allowed to remain in the possession of the said De Lashmutt, who has been allowed to receive the rents and profits thereof, or to have the beneficial use and occupation thereof; and this defendant further says that, during the period of delay aforesaid in the enforcement of said security, the value of said real estate has very greatly diminished, and he says that, had said real estate been sold under said deed of trust when the same first became due and payable, such sale would have produced a sum sufficient to pay said indebtedness; whereas now, after a lapse of about four

years, said improved real estate having been allowed to run
down and decay by the said De Lashmutt, who, this defendant
is advised and believes, is still the owner of said real estate,
the same cannot now be sold for enough to satisfy said note."
See D. C. Code, sec. 95 [31 Stat. at L. 1204, chap. 854].

In the affidavit of defense the facts set forth in these pleas
are substantially incorporated. That such was the understand-
ing of the parties at the hearing before the trial court is ap-
parent from the opinion of that court, which is appended to and
made a part of appellee's brief; for it therein is assumed that,
when the extension of the note was made by Laura Green, she
knew that its payment had been assumed "in the granting
deed" by De Lashmutt, the grantee of the mortgagor. That
this is so is further apparent from the briefs and arguments in
this court; for in the brief of appellee are the following state-
ments: "The defense sought to be made in defendant's affi-
davit *is but an elaboration of the points made in the several
pleas.* * * * It appears that Wolfe, the maker of the
note, had sold the property upon which it was secured to De
Lashmutt, who, as part consideration, assumed payment there-
of." Moreover, the argument at bar proceeded upon the as-
sumption that the extension of the note by Laura Green was
with full knowledge that De Lashmutt had assumed and agreed
to pay it. And yet this court now apparently questions the
technical sufficiency of the affidavit of defense,—a point not
suggested by the trial court, by counsel in the briefs, or in the
argument at bar. Had such a contention been made below it
would have required but a moment for defendant to have
made his affidavit conform literally to his pleas. We have
said repeatedly that affidavits of defense should be liberally
construed, to the end that no real defense be foreclosed sum-
marily. It is my view, therefore, that this court should now
squarely meet the real issue here, which is whether the giving of
time by the mortgagee to the purchaser of the equity of re-
demption, who has agreed with his grantor to pay the mortgage
debt, the mortgagee having knowledge of that fact and the ex-
tension being given without the knowledge or consent of the
mortgagor, releases the mortgagor.

The Supreme Court of the United States, in *Johns* v. *Wilson,* 180 U. S. 440, 448, 45 L. ed. 613, 617, 21 Sup. Ct. Rep. 445, says that the real question in *Union Mut. L. Ins. Co.* v. *Hanford,* 143 U. S. 187, 36 L. ed. 118, 12 Sup. Ct. Rep. 437, "was whether the giving of time to the grantee, without the assent of the grantor, discharged the latter from personal liability. It was held that it did (citing *Shepherd* v. *May,* 115 U. S. 505, 29 L. ed. 456, 6 Sup. Ct. Rep. 119)." The majority opinion here differs with the Supreme Court as to what was decided in *Shepherd* v. *May.* In that case the purchaser of the equity of redemption had not assumed to pay the mortgage debt. He was not, therefore, as between his grantor and himself, the principal and his grantor the surety, nor was there evidence that the extension was made without the knowledge of his grantor. However, the Supreme Court itself has determined what that case decided. Later on in the opinion in *Johns* v. *Wilson,* the court says: "Further objection is made to this proceeding upon the ground that it is not shown that the mortgagor 'had been exhausted' or that he is insolvent. If by this is meant that, after the sale of the property, the mortgagee is bound primarily to proceed against the mortgagor personally for any deficiency, the position is inconsistent with the doctrine of the cases above cited, in which it is assumed that the purchaser, who has agreed to pay the mortgage, is the principal debtor and the mortgagor is surety. This view is thus concisely stated by Mr. Justice Gray in *Union Mut. L. Ins. Co.* v. *Hanford,* 143 U. S. 187, 190, 36 L. ed. 118, 120, 12 Sup. Ct. Rep. 437: 'The grantee as soon as the mortgagee knows of the arrangement becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable to the latter, and the relation of the grantee and grantor toward the mortgagee, as well as between themselves, *is thenceforth that of principal and surety for the payment of the mortgage debt.*'" (Italics mine.) And such is the almost universal rule. *Calvo* v. *Davies,* 73 N. Y. 211, 29 Am. Rep. 130; *Spencer* v. *Spencer,* 95 N. Y. 353; *George* v. *Andrews,* 60 Md. 26, 45 Am. Rep. 706; *Chilton* v. *Brooks,* 72 Md. 554, 20 Atl. 125; *Franklin Sav. Bank* v. *Cochrane,* 182 Mass. 586, 61

L.R.A. 760, 66 N. E. 200; *Home Nat. Bank* v. *Waterman,* 134 Ill. 461, 25 N. E. 648, 29 N. E. 503; *Iowa Loan & T. Co.* v. *Haller,* 119 Iowa, 645, 93 N. W. 636; *Dedrick* v. *Den Bleyker,* 85 Mich. 475, 48 N. W. 633; *Sime* v. *Lewis,* 112 Minn. 403, 128 N. W. 468; *Pratt* v. *Conway,* 148 Mo. 291, 71 Am. St. Rep. 602, 49 S. W. 1028; *Merriam* v. *Miles,* 54 Neb. 566, 69 Am. St. Rep. 731, 74 N. W. 861; *Hull* v. *Hayward,* 13 S. D. 291, 79 Am. St. Rep. 890, 83 N. W. 270; *Herd* v. *Tuohy,* 133 Cal. 61, 65 Pac. 139.

As I view the question it is a very simple one. When the grantee of the mortgagor assumes and agrees to pay the mortgage debt he becomes, as between the parties, the principal and his grantor the surety. But the mortgagee is under no obligation to change the relationship between the mortgagor and himself. If, however, the mortgagee acts on the faith of, or otherwise makes himself a party to, the agreement between the mortgagor and his grantee (*Keller* v. *Ashford,* 133 U. S. 610, 625, 33 L. ed. 667, 673, 10 Sup. Ct. Rep. 494), or assents to the agreement, or does or omits any act on the faith of it (*Willard* v. *Wood,* 135 U. S. 309, 314, 34 L. ed. 210, 213, 10 Sup. Ct. Rep. 831), the mortgagor's grantee becomes the principal as to the mortgagee as well as to the mortgagor, and the giving of time to the grantee without the assent of the grantor releases the latter from personal liability. In the present case the mortgagee not only recognized the agreement between the mortgagor and his grantee, but indorsed on the note itself, for a valuable consideration, an extension for three years. But one interpretation can be placed upon the words of this indorsement, that "said note and deed of trust securing the same are to remain otherwise unqualified and in full force," and that is that the debt and the mortgage have been extended for the period named. And yet the majority opinion holds that the mortgagor, appellant here, could have paid the note at the time it originally was to mature, and then immediately have instituted foreclosure proceedings against his grantee. My view is that the rule is directly to the contrary. There was but one debt, evidenced by this one mortgage note, and when the mortgagee extended the time of payment of that debt he thereby

rendered it impossible for the mortgagor, even had he paid the mortgage, to foreclose until after the expiration of the extended time. Authorities need not be multiplied, but in *Spencer* v. *Spencer,* 95 N. Y. 353, 357, the court, speaking of an agreement of extension between the mortgagee and the purchaser of the equity of redemption, said: "This agreement was a valid contract, and would preclude the holder of the mortgage from enforcing it against the land until after the expiration of the extended time." And in *George* v. *Andrews,* 60 Md. 26, 34, 45 Am. Rep. 706, the court, speaking of an agreement of extension, observes: "It is very clear that after this arrangement between the appellant and Meredith, if Andrews and wife, who were the original debtors, had tendered the amount of the mortgage debt to the appellant and demanded an immediate assignment to them that they might enforce immediate payment, Meredith could not have complied so as to enable them to proceed; nor could *he* have proceeded at once upon the demand of the appellees as the sureties of Meredith under the theory of the law as stated, for he had bound himself to wait for a definite period. It may be possible that during that period such depreciation might take place as to create the deficiency." This must be so, 'for by paying the debt the mortgagor merely would be subrogated to the rights of the mortgagee.

Believing that the rule announced in the majority opinion is inequitable and opposed to the decisions of the Supreme Court of the United States, I respectfully dissent.

Mr. Chief Justice COVINGTON, of the Supreme Court of the District of Columbia, sat with the Court in the hearing and determination of this appeal, in the place of Mr. Justice VAN ORSDEL.