**Muriel Mehlman YASUNA, Appellant,**

v.

**Howard F. MILLER, Appellee.**

**No. 11699.**

District of Columbia Court of Appeals.

Argued Oct. 18, 1977.

Decided March 1, 1979.

Martin D. Teckler, Washington, D. C., for appellant.

William A. Mann, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and GALLAGHER and HARRIS, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal from the trial court's grant of summary judgment in favor of the plaintiff. The judgment for appellee Miller was for the principal balance still due on a promissory note executed May 24, 1962, prior to adoption of the Uniform Commercial Code in this jurisdiction, and for interest thereon. We affirm.

On May 24, 1962, appellant Muriel Mehlman Yasuna purchased from William H. Roff (now deceased) certain real property (with a dwelling situated thereon) known as 1730 P Street, N.W., Washington, D.C., for a total price of $32,000. On that date appellant executed a promissory note—secured by a deed of trust on the P Street property—for the full purchase price, payable to Roff. Appellee Howard F. Miller purchased the note from Roff on November 17, 1963.[1]

Appellant sold the real property to Robert J. Toomey and Edwin T. Holloway on January 3, 1964. There were several subsequent transfers of the same real property and eventually payments on the note ceased after the balance due had been reduced to $13,242.75 as of January 24, 1975.[2] This suit on the note followed on November 26, 1975.

Since this appeal is from the granting of summary judgment, we must first determine whether any genuine issue of material fact exists. *Bennett v. Kiggins,*

---

1. Appellee Miller brought suit on behalf of himself individually and as the personal representative of the estate of William H. Roff.

2. Meanwhile the property was sold for delinquent real estate taxes in 1972 and the right of redemption expired in 1974, so that the property is no longer available as security to collect the indebtedness on the promissory note.

D.C.App., 377 A.2d 57, 59 (1977); *Hill v. District of Columbia*, D.C.App., 345 A.2d 867 (1975). *See* Super.Ct.Civ.R. 56(c). As this court stated in *International Underwriters, Inc. v. Boyle*, D.C.App., 365 A.2d 779, 782–83 (1976):

> In order to survive the summary judgment motion, the opposing party need only show that there is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of truth at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). Summary judgment is appropriate only where "it is quite clear what the truth is . . . ." *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944). A doubt as to whether or not an issue of fact has been raised is enough to preclude a grant of summary judgment. *Washington Post Co. v. Keogh*, 125 U.S.App.D.C. 32, 34, 365 F.2d 965, 967 (1966).

In examining this case to determine whether appellant raised a genuine issue of material fact, we must view the record in the light most favorable to the party opposing the motion. *Bennett v. Kiggins, supra* at 59. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Appellant's defense is that the note she executed was assumed by Toomey and Holloway, the persons to whom she sold the P Street property. Because they assumed the note, says appellant, they became the principal obligors, "thereby making her a surety on that obligation and consequently having available to her certain defenses to this action in that status of a surety only." The trial court ruled that appellant had to satisfy two legal requirements in order to become a surety on the note. First, appellant, as maker of the note, had to show that all three parties to the note—the mortgagor-maker, the mortgagee-holder, and the grantee—agreed that the grantee would assume sole responsibility on the note.[3] Thus, appellant was required to show that she, Toomey and Holloway, and Miller[4] all agreed to an assumption of the note by Toomey and Holloway, in order for appellant to assume the status as a surety. Second, the trial court stated the requirement that "there must be words in the deed of conveyance from which, by fair import, an agreement to pay the debt can be inferred." *Shepherd v. May*, 115 U.S. 505, 510, 6 S.Ct. 119, 121, 29 L.Ed. 456 (1885). Consequently, said the trial court, appellant was required to show that there was some language in the deed of conveyance which would imply an agreement by Toomey and Holloway to assume the obligation. The court concluded that appellant had not shown the parties' compliance with either requirement and therefore granted appellee's motion for summary judgment.

■ Since there is little local law relating to these issues, we will first discuss the general principles underlying our analysis. The initial transaction between the parties involved a loan of money to purchase realty, evidenced by a promissory note and secured by a deed of trust. Deeds of trust are viewed as generally equivalent to common law mortgages,[5] a mortgage being by defi-

---

3. This requirement is based upon a statement of law in *Toomey v. Cammack*, D.C.App., 345 A.2d 453, 456 (1975).

4. At the time appellant sold the real property to Toomey and Holloway, Miller was apparently the holder of the note, as Roff's assignee. Whether the actual holder was Miller or Roff at the time of the alleged assumption makes little difference, however, as there was no proof of an agreement with either of them concerning the alleged assumption.

5. *W. A. H. Church, Inc. v. Holmes*, 60 App.D.C. 27, 29, 46 F.2d 608, 610 (1931). The court quoted with approval from *Middleton v. Parke*, 3 App.D.C. 149, 164 (1894), "while a mortgage is not necessarily perhaps a deed of trust, a deed of trust to secure the loan of money is necessarily a mortgage." The court also recapitulated the holding of *Wood v. Grayson*, 22 App.D.C. 432, 445 (1903), that "deeds of trust were in their nature and effect merely mortgages to secure debts . . . ."

In effect, the deed of trust creates a three-party mortgage transaction. While the difference between the straight two-party mortgage and the trust deed mortgage may have been significant at one time, this is no longer the

nition an interest in property given as security for the payment of a debt. *See,* Axelrod, Berger & Johnstone, Land Transfer and Finance 137 (1971). Under the law of mortgages, a notion of fundamental importance is "that the security is inseparable from the obligation" for the mortgage's "sole function is to serve as security for the performance of the obligation. The obligation is correctly regarded as the principal thing with the interest in the land attached to it in an extremely important but subsidiary capacity." Osborne, Mortgages § 223 at 441 (2d ed. 1970).

■ Where there is a separately executed note, accompanying the mortgage, the cases uniformly hold that the mortgage secures the debt (not the instrument itself) with the note viewed as evidence of the mortgagor's primary personal obligation. Mortgages, *supra,* § 105 at 166; 3 R. Powell, The Law of Real Property ¶ 442 at 559 (1974). Thus, although the transaction may involve both a negotiable instrument (promissory note) and a trust deed, liability of the maker-mortgagor rests on the underlying debt. Indeed the note and the trust deed can be considered merely different parts of a single contract. *See, e. g., Cafritz Construction Co. v. Mudrick,* 61 App.D.C. 189, 190–91, 59 F.2d 864, 865–66 (1932). The remedy of the holder-mortgagee, of course, may depend on which route he pursues to collect his debt. This case for example, involves a suit on a promissory note [6] rather than a mortgage foreclosure and deficiency

judgment. In either case, however, the creditor sues on the underlying monetary obligation.

■ By executing a promissory note, appellant bound herself unconditionally to pay the instrument according to its terms, unless discharged.[7] Because a discharge from liability on a promissory note is effected by any act or agreement which would discharge a simple contract for the payment of money, our discussion must necessarily draw on general principles of contract law. *See, e. g., Carter v. Purcellville National Bank,* D.C.Mun.App., 158 A.2d 325 (1960); *Jones v. Keiflin,* D.C.Mun.App., 154 A.2d 360 (1959). As a mortgagor, appellant remained subject to her duty of performance unless it was discharged according to the rules of contract governing the particular obligation by which she was bound. Mortgages, *supra* § 247 at 502–03.

Appellant's contract defense, that a subsequent purchaser of the property assumed the note, relegating appellant to surety status and making available the surety defenses, must be evaluated in light of District of Columbia case law governing the creation of a principal-surety relation in a mortgage context. The availability of the suretyship defenses asserted by appellant (*e. g.,* discharge of the surety by modification of the principal obligation) must be resolved according to the common law because the execution and alleged assumption of the note occurred before the effective date of

---

case. *See* Axelrod, Berger & Johnstone, Land Transfer and Finance 141 (1971).

6. Effective January 1, 1965, the law of negotiable instruments is governed by the applicable provisions of the Uniform Commercial Code (UCC), as found in D.C.Code 1973, §§ 28:3–101–3–805. *See* Act of Dec. 30, 1963, Pub.L. No. 88–243, § 1, 77 Stat. 630. For notes executed or assumed prior to that date the law applicable to particular issues concerning the notes is in some instances different than under the present Code sections. *Compare Toomey v. Cammack, supra* at 456 n.10 (applying the common law rule to a suit brought after the effective date of the UCC where the underlying note was executed prior to that effective date) *with United Securities Corp. v. Bruton,* D.C.

App., 213 A.2d 892 (1965) (applying then-D.C. Code 1961, § 28:3–307 (Supp. IV, 1965), a provision of the UCC, in a suit where the trial occurred after the UCC's effective date, but where the underlying transaction occurred prior to that effective date).

7. *See* D.C.Code 1973, § 28:3–307(2), providing "when signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." Although the transaction took place prior to the effective date of the UCC, this provision relating to a procedural matter applies where the trial occurs after the effective date. *United Securities Corp. v. Bruton, supra; Toomey v. Cammack, supra* at 454 n.2.

the Uniform Commercial Code in the District of Columbia.[8]

 Initially, the suretyship problem arises where the original mortgagor, bound to a primary liability, becomes a surety through the assumption of this liability by another, in connection with the sale of mortgaged land. According to the Restatement of Security § 83 at 239 (1941):

> The suretyship relation is created where the surety . . . (c) having been a principal obligor, his obligation, without a novation,[9] has been assumed by another or his property has been transferred under such circumstances as to place the property under the primary burden of the obligation.

In mortgage law, "assumption" is a term of art, defined by reference to the transaction between buyer and seller. Where a mortgagor transfers mortgaged land, the land always remains "subject to" the mortgage, that is, bears the principal burden of the mortgage, but the grantee is not personally obligated to pay off the debt which is secured by the property. The grantee may, however, not only acquire the property subject to the encumbrance, but specifically agree with the seller to assume personal and primary responsibility for payment of the debt secured by the mortgage. Where the buyer "assumes" the debt he becomes primarily liable on the note, and the original maker is relegated to the status of

surety. *See generally* Restatement of Security, *supra*, § 83, Comment on clause (c) at 243; Mortgages, *supra*, § 248; Land Transfer and Finance, *supra* at 161–70.

 Whether an assumption by the grantee occurs depends, in the District of Columbia, on the existence of an agreement between the grantor and grantee. Preferably, the agreement will be express, as where there "are words in the deed of conveyance from which, by fair import, an agreement to pay the debt can be inferred." *Shepherd v. May, supra*, 115 U.S. at 510, 6 S.Ct. at 119.[10] However, the agreement to assume payment, as between the grantor and his grantee, can be implied as well as express,[11] and in some cases may be separate from the deed conveying the property. *See, e. g., Brice v. Griffin*, 269 Md. 558, 307 A.2d 660, 662 (Md.1973).

 Where a grantee assumes the debt of the mortgagor, the surety-principal relationship only applies as between themselves since the contract rights of the mortgagee cannot be changed by any arrangement between the mortgagor and his grantee. Because courts in this jurisdiction have been reluctant to treat as principal debtor a person who is under no direct liability to the mortgagee, the assuming grantee becomes an additional promisor only. *See, e. g., Wolfe v. Murphy*, 47 App.D.C. 296 (1918). Thus, the existence of an assumption con-

---

**8.** *See* Act of Dec. 30, 1963, Pub.L. No. 88–243, § 1, 77 Stat. 630, effective Jan. 1, 1965.

**9.** A novation occurs by a three-party agreement whereby the delegate assumes the duty of the original obligor and this assumption is accepted by the obligee in substitution for the original obligor's liability. Calamari & Perillo, Contracts § 277 at 432 (1970).

**10.** In *Shepherd* (a local case), the Supreme Court considered the question of whether Shepherd, the mortgagor, was discharged from liability on a note secured by a deed of trust because May, the mortgagee, had twice extended the date when the note fell due upon the requests of Walker, who had allegedly assumed the mortgage from Shepherd. The Court rejected the contention that by force of the conveyance alone, even with the creditor's assent, the grantee became the principal debtor. *Shepherd* also indicated that an express prom-

ise to the mortgagee by the grantee to pay the debt, would not convert the principal debtor into a surety without the specific assent of the mortgagee to suretyship status.

**11.** We decline to accept the contention, however, that an assumption agreement by Toomey and Holloway should be implied because the amount of the outstanding mortgage debt was deducted from the total purchase price paid by them for the property. That may be the law in some jurisdictions. *See e. g., Brice v. Griffin*, 269 Md. 558, 307 A.2d 660 (Md.1973). However, we are in accord with a majority of the jurisdictions in the United States. *See* Annot., 111 A.L.R. 1114, 1116–24 (1937); Mortgages, *supra* at § 257. *But see* Annot., 111 A.L.R. 1114, 1124–33 (1937) (for cases following the minority rule). *See generally* Mortgages, *supra* at § 257, for criticism of the minority rule.

tract between mortgagor and grantee bears on the mortgagor's right to reimbursement; it does not prevent the mortgagee from proceeding against the mortgagor, and in fact enlarges his remedy by permitting an election to sue mortgagor, grantee or seek foreclosure. *See* Mortgages, *supra* § 278 at 563 & n.23. In effect, the mortgagee becomes the third-party creditor beneficiary of the assumption contract between the grantor and grantee; as such he is entitled to performance based on the contract and can enforce that right directly against the assuming grantee. *City Mortgage Investment Club v. Beh,* D.C.App., 334 A.2d 183, 184–85 (1975).

■■■■ Where the mortgagor asserts surety status as a defense to an action brought by the lender, the prevailing view in this jurisdiction has been that mutual agreement between the three parties to the surety role must first be shown. *See, e. g., Chapman v. Hoage,* 296 U.S. 526, 56 S.Ct. 333, 80 L.Ed. 370 (1936); *Toomey v. Cammack, supra; DeLeon v. Rhines,* 64 App. D.C. 73, 74 F.2d 477 (1934); *Wolfe v. Murphy, supra.* As this court stated in *Toomey v. Cammack, supra* at 456,

> it is the settled common law of the District of Columbia that the maker of a note does not become a surety by assigning the obligation unless all three parties so agree, and in the absence of such agreement an extension of time for payment by the holder does not discharge the maker. .

Although some jurisdictions find a mortgagee bound by the incidents of suretyship when he has knowledge of an assumption by the grantee,[12] in the District of Columbia a three-party agreement to suretyship status must exist before a modification of the principal obligation by the lender and grantee releases the original mortgagor.

■■■■ Because the three-party agreement involves creation of a new contractual duty, and thus rests on a basis independent from the mortgagor-grantee assumption contract, words of assumption in the deed of conveyance or other indicia of vendor-vendee agreement are not critical to a finding that, as between the three parties, the grantee has become the principal debtor.[13] In proving suretyship status, however, the mortgagor may establish the requisite three-party agreement where an assumption by the buyer is coupled with the lender's consent, ratification or unambiguous recognition of the grantee's primary liability. *See generally* Contracts, *supra,* § 10 at 10–11.[14]

■■■■ In the case under review, the deed of conveyance contains no reference to the existence of an assumption agreement, nor did it contain terms of assumption by the grantee. Appellant did not show the existence of an assumption agreement, separate from the deed, between herself and the grantees. Additionally, "there is nothing in the pleadings, memoranda or supporting exhibits submitted by either side which would indicate that the parties agreed that grantees Holloway and Toomey would assume full responsibility for the note, thereby making . . . [appellant] a surety."[15]

---

12. *See, e. g., Union Mutual Life Ins. Co. v. Hanford,* 143 U.S. 187, 190–91, 12 S.Ct. 437, 36 L.Ed. 118 (1892); Restatement of Security § 83, Comment on clause (c) at 243, § 114.

13. In the *Shepherd* case, *supra* 115 U.S. at 507, 6 S.Ct. at 121, 29 L.Ed. at 457, although there was no evidence of an assumption by the grantee the Supreme Court indicated that the grantee could have become the principal debtor by mutual agreement of all three.

14. Under general contract principles a contract may be express or implied in fact where agreement is manifested by conduct. Both are true contracts formed by mutual manifestation of assent. Contracts, *supra* § 10; *Bloomgarden v. Coyer,* 156 U.S.App.D.C. 109, 479 F.2d 201 (1973); *Richardson v. J. C. Flood Co.,* D.C. App., 190 A.2d 259 (1963). In *Toomey v. Cammack, supra,* although there was undisputed evidence of an assumption by the buyer, the lender had expressly stated that he would look to the mortgagor for payment in the event of default. Thus, *Toomey* left open the possibility in other cases that a mortgagee could become a party to an assumption by his conduct.

15. Trial Court Opinion at 2.

The note itself contains no reference to either Toomey or Holloway. The note does contain reference to assumptions by two sets of grantees subsequent to Toomey and Holloway, although those alleged assumptors never signed the note—thus indicating that they would probably not be liable on the instrument itself.[16] Even proceeding on the assumption that those later grantees did assume the responsibility for payment of the note, that fact alone would not make Toomey and Holloway personally liable on the note. *See DeLeon v. Rhines, supra.* Nor does that fact without more tend to show that there was an agreement between Roff (the original holder of the note) or Miller (his assignee), Yasuna, Toomey and Holloway, to substitute a new primary obligor. Appellant's assertion in her affidavit that Toomey and Holloway assumed the note is a legal conclusion, unsupported by specific facts which demonstrate that those parties all agreed upon an assumption.

█ Instead of establishing the existence of a three-party agreement, appellant asks this court, as she did the trial court, to infer its existence from various circumstances. First, she alleges in her brief that "the Plaintiff Miller has acknowledged, in his deposition, that both he and Roff were *aware of* the *assumption* by Toomey and Holloway of responsibility for payment of the Note (Record, pp. 27, 34)" (emphasis added). This allegation is unsubstantiated in the record. Miller only acknowledged receiving payments on the note from persons other than Yasuna. She further alleges that by receiving those payments Miller and Roff were *aware of* the assumption by Toomey and Holloway. We do not think that the mere receipt of payments on a note shows awareness of an *assumption* by the persons making the payments. It is also consistent with a person making payments on a note, where that person took the property *subject to* a mortgage note.[17] Furthermore, awareness of an assumption, assuming for the moment there was one, does not necessarily show the mutual agreement of all three parties to the mortgage. Appellant also refers to the fact that the note contains references to two subsequent assumptions. The fact that there may have been subsequent assumptions (again, assuming that they were legally sufficient assumptions), with payments on the note, does not raise an inference that there was a previous, mutual agreement between all three necessary parties to substitute a new principal obligor.[18]

We conclude the trial court did not err in granting summary judgment for appellees. Appellant did not raise any genuine issue of

16. Generally, "[n]o person is liable on an instrument unless his signature appears thereon." D.C.Code 1973, § 28:3–401(1). This rule does not represent any change from the law applicable prior to the adoption of the Uniform Commercial Code in the District of Columbia. *Compare* D.C.Code 1961, former § 28–119; *Rouse v. United States*, 94 U.S.App.D.C. 386, 387, 215 F.2d 872, 873 (1954), *with* D.C.Code 1973, § 28:3–401(1). However, D.C.Code 1973, § 28:3–606(1)(a) appears to have altered the common law rule that the terms of a note cannot be altered by an agreement with a third person not a party to the instrument.

17. As stated in *Elliott v. Sackett*, 108 U.S. 132, 142, 2 S.Ct. 375, 382, 27 L.Ed. 678 (1883):

The fact that Elliott made two payments of the interest on the incumbrance is not inconsistent with his not having assumed the payment of the incumbrance. As owner of the property subject to the incumbrance, and desirous of retaining it so long as there was any value in the equity of redemption, he would naturally pay the interest to save the foreclosure.

18. Even assuming that appellant had been able to prove her status as surety, she failed to allege sufficient facts to show a discharge of her liability. She pointed to two factors as proving a discharge as surety. First, appellant contends that appellee had granted extensions of time for payment on the note without her approval. As is apparent from the facts of this case, no extensions of the time when the note fell due were ever granted, but what are referred to as extensions were several late payments (never more than 30 to 45 days) on individual installments of the note. Second, appellant argues that she was discharged when appellee allowed an increase in the amount of the indebtedness on the note. Appellee did add to the note a $249 premium for a fire insurance policy when the then-current property owner let that insurance lapse. The deed of trust, however, specifically provides for the payment of insurance premiums by the debtor along with the instrument.

material fact relating to the alleged suretyship agreement. Consequently, the order of the trial court is

*Affirmed.*