Jerome and Myrtle Scheffres, et al. [1] v. Commissioner. Scheffres v. Commissioner
Docket Nos. 4459-67-4461-67.
United States Tax Court
T.C. Memo 1969-41; 1969 Tax Ct. Memo LEXIS 255; 28 T.C.M. (CCH) 234; T.C.M. (RIA) 69041; February 26, 1969. Filed Julius I. Fox, 1707 H St., N.W. Washington, D.C., for the petitioners. Louis F. Nicharot, for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined the following income tax deficiencies for the calendar year 1962 in these consolidated cases: Petitioners
Docket
Deficiency
Jerome & Myrtle Scheffres
4459-67
$1,994.42
Milton & Lillian Turner
4460-67
1,613.17
Eugene Scheffres
4461-67
1,589.63
*256 The deficiency in each case arose by reason of respondent's determination that "the transfer of [an] undivided interest in * * * a parcel of real property containing approximately ten (10) acres to the Prince George's County (Md.) Board of Education does not qualify as a charitable contribution within the meaning of section 170 of the Internal Revenue Code." [2] Accordingly a deduction of $4,500 claimed in each of the returns here involved in connection with this transaction was disallowed. Findings of Fact Many of the pertinent facts have been stipulated by the parties. The stipulation and exhibits attached thereto, are incorporated herein by this reference. Petitioners Jerome and Myrtle Scheffres are husband and wife and resided at 6204 Lennox Road, Bethesda, Maryland at the time of the filing of their petition. Petitioners Milton and Lillian Turner are husband and wife and resided at 8903 Woodland Drive, Silver Spring, Maryland at the time their petition was filed. Petitioner Eugene Scheffres resided at 3912 The Alameda, Baltimore, Maryland *257 at the time of the filing of his petition. For the period in question all of the petitioners filed income tax returns with the district director of internal revenue at Baltimore, Maryland. During the taxable year 1962 all of the petitioners were members of the partnership of Turner and Scheffres. There were no other partners. On March 21, 1961 the Turner and Scheffres partnership, represented by Charles Scheffres, entered into a joint venture to acquire and hold certain real estate located in the area of Greenbelt, Maryland for investment purposes. This joint venture filed a partnership return for 1962 with the district director of internal revenue at Baltimore, Maryland in the name of Greenbelt Associates. The percentage of interest of each of the members of Greenbelt Associates in that joint venture is as follows: Turner and Scheffres Partnership
10%
Edward Perkins and Harold Kramer, individually, and as trustees for thepartnership of Perkins, Perkins and Kramer
20%
Gudelsky Brothers
25%
Theodore N. Lerner
10%
Sanford Slavin
10%
Albert H. Small
6.25%
Herman Greenberg
6.25%
Ralph Ochsman
6.25%
Morton I. Funger 6.25%
100.00%
On March 21, 1961 the *258 members of Greenbelt Associates entered into an agreement to purchase a tract of land of approximately 390 acres from Edward M. and Evelyn Perkins and Harold and Rose Kramer (referred to in the Opinion as the "sellers"). 235 On the same date, the members of Greenbelt Associates also entered into an agreement relating to the development of that tract of land by the construction of apartment houses and other income-producing improvements thereon. While these agreements were signed by Charles Scheffres rather than by petitioners, it is stipulated that in connection with this Greenbelt property Charles was acting not for himself but as agent for the Turner and Scheffres partnership. Edward M. Perkins and Harold Kramer, in addition to being sellers under the contract of sale mentioned above, together held a 20 percent interest in Greenbelt Associates, individually, and as trustees for the partnership of Perkins, Perkins and Kramer. Edward M. and Evelyn Perkins and Harold and Rose Kramer acquired the land which was the subject of the contract of sale mentioned above by deeds dated April 30, 1959 and February 21, 1961. The contract under which they agreed to purchase the tract provided *259 that consummation of the purchase was contingent upon their obtaining a change in the zoning of the greater portion of the property from I-1 (industrial) to R-18 (residential), so as to permit the construction of garden-type apartments on approximately 300 acres of the tract. In 1958 or early 1959 Edward M. and Evelyn Perkins and Harold and Rose Kramer made application for a zoning change to the Maryland National Capital Park and Planning Commission, which is the zoning authority for Prince George's County, Maryland. Before taking any final action on the application, the National Park and Planning Commission referred the petition to the Prince George's County Board of Education. Under the procedure followed in Prince George's County, the Park and Planning Commission refers an application for a zoning change to the Board of Education when it appears that the granting of the petition would result in an increase in the number of children in a particular area. If the Board of Education determines that a zoning change would require the erection of a school within the area of the requested change, it informs the Park and Planning Commission that reservation of a school site within that *260 area will be necessary. Negotiations with regard to the acquisition of a suitable school site by Prince George's County are usually thereafter conducted between the Board of Education and the applicants prior to the granting of any zoning change. In considering the zoning change requested by Edward M. and Evelyn Perkins and Harold and Rose Kramer as contract purchasers, the Board of Education determined that reservation of a school site would be necessary. Edward M. Perkins and Hammond T. Welsh, an attorney who represented the contract purchasers with regard to the zoning change, gave the Board of Education an oral assurance that a certain 10-acre parcel of land topographically suitable to the Board of Education and delineated on the plat of the proposed development would be donated to Prince George's County for use as a school site. The Board agreed to pay "the proportionate share of utility installation costs and all abutting street improvements." Accordingly, no further steps were taken thereafter by the Board of Education in negotiating for the acquisition of a school site in the proposed development. The requested zoning change was subsequently granted. In practice the Board *261 of Education acquired land for school purposes in similar proposed developments by donation from the sponsors, by negotiated purchases at prices fixed by contract or by condemnation proceedings in which the price was fixed by law. After the site suitable for the erection of a school within the subdivision had been agreed upon by the Board of Education and the developers who were applicants for rezoning, and the Park and Planning Commission was so notified, no building permits would be issued permitting the erection of non-school structures on that site. If the promised gratuitous conveyance had not been made, the Board of Education could have acquired the 10-acre parcel upon the payment of a price by negotiated purchase or by condemnation. Paragraph 4 of the contract of sale of the 390-acre tract entered into on March 21, 1961 between Edward M. and Evelyn Perkins, Harold and Rose Kramer and the members of Greenbelt Associates, provided as follows: Purchasers acknowledge that they have been advised by Sellers that a ten (10) acre parcel of the land herein described is to be conveyed to the Prince George's County Board of Education, free of encumbrances and without charge, except *262 that the said Board of Education will agree that it will pay the proportionate share of utility installation costs and all abutting street improvements. Seller will release the above school site from the 236 mortgage without requiring additional payments by purchaser on account thereof. On or about July 18, 1961, the purchase of the 390-acre tract was consummated. Title was conveyed to trustees for the members of Greenbelt Associates who gave back a deferred purchase money deed of trust securing $1,600,000 of the $2,000,000 purchase price. The remaining $400,000 was paid in cash. On or about May 7, 1962, the trustees then holding title for Greenbelt Associates conveyed title to the 10 acres of the 390-acre tract of land to the Prince George's County Board of Education. The 10-acre parcel constituted the site determined by the Board of Education to be suitable for a school and delineated for such use on the development plat pursuant to its discussions with Edward M. Perkins and Hammond J. Welsh. No one acting on behalf of Greenbelt Associates, of which joint venture petitioners held membership interests, ever made any commitment to or negotiated with the Prince George's County *263 Board of Education with regard to any conveyance of land for school purposes. The information return (Form 1065) of Greenbelt Associates covering the year 1962 signed by a partner on April 10, 1963, showed that the partners' capital accounts had been reduced during the year by the deduction of an item referred to as "charitable contribution 1962" in the total amount of $135,000. The capital account of petitioners, carried in the name of Charles Scheffres, had been reduced on account of such deduction in the amount of $13,500. Petitioners' capital account as of the beginning of 1962 was $42,905.14. After adjustments reflecting the item "charitable contribution" and also reflecting "capital contributed," "withdrawals and distributions," "credit adjustment" and 'ordinary loss," their capital account at the end of the year was $30,371.71. source of the figure "$135,000" is not disclosed by the record. [3]
*264 The Board of Education of Prince George's County, Maryland, is a qualified and eligible political subdivision of a State of the United States within the meaning of section 170 (c)(1) and the 10-acre parcel of land was to be used exclusively for public purposes. Greenbelt Associates originally planned to construct 5,000 apartment units in the contemplated development. As of the date of the trial of this case, 3,000 apartment units have been constructed and there were plans for the construction of additional units. A shopping center has also been erected within the development. The fair market value of the parcel of land conveyed to the Prince George's County Board of Education on May 7, 1962, was $51,300 as of that date. Opinion KERN, Judge: The questions for decision in this case are whether or not petitioners as participants in the joint venture known as Greenbelt Associates are entitled to charitable contributions deductions under section 170[4] to the extent of their proportionate interests in a 10-acre parcel of land transferred by Greenbelt Associates to the Board 237 of Education of Prince George's County, Maryland, and if so, the amounts thereof. *265 Petitioners and respondent appear to be in agreement that the Board of Education of Prince George's County is an organization referred to in section 170(c)(1) and that the 10-acre tract was to be used exclusively for public purposes as a school site. Because of the importance of the facts in a resolution of the problems before us we set out in some detail a resume of those facts as we interpret them in the light of the record herein. A partnership composed of X and Y arranged for the purchase of a large tract of land located near Washington, D.C., in Prince George's County, Maryland, and suitable for development by the erection of apartment houses thereon, this purchase being contingent on the ability of X and Y to obtain a zoning change making it possible to use the land, theretofore zoned for industrial use, for the erection of garden-type apartments. A zoning change would make it necessary for an elementary school to be erected on a small part of the land involved to serve the educational needs of the children anticipated to be residents of the apartments. The existence of the school would be advantageous to the developers of the real estate in that it would make the apartments *266 to be located thereon more desirable and therefore more valuable. In their negotiations with the proper county officials incident to obtaining this zoning change X and Y orally agreed to convey a certain 10-acre parcel of this real estate to the County Board of Education which was suitable, in the Board's opinion, for the erection thereon of a school. The Board agreed to pay certain costs of utility installations and abutting street improvements in connection with the parcel of land agreed to be conveyed to it, but did not agree to pay anything for the land. In Prince George's County, Maryland, whenever an application before the zoning authorities in connection with a building development disclosed to the County Board of Education the necessity of erecting a school building thereon, the Board would take steps to acquire a site in the development suitable for such a school. The acquisition might be by a conveyance which is for all practical purposes gratuitous (as in the instant case), by a conveyance pursuant to a negotiated purchase for a price agreed upon, or by condemnation. After the Board indicates to the zoning authorities the necessity for the erection of a school, after the *267 site in the proposed development which the Board considers suitable for such a school is delineated on the development plat as having been set aside for use for a school, and after the granting of the zoning change and the approval of the development plat, no building permits will be granted by the county officials allowing the erection of any building other than a school on the parcel of land so delineated. No statute or ordinance compels or purports to compel the developer or applicant for a zoning change to donate to any public body any parcel of land for educational or recreational purposes. The only sanction under which the conveyance to the Board of Education of any parcel of land for the purpose of erecting a school thereon could be compelled is condemnation or an action to enforce performance of an obligation to convey assumed in a valid contract negotiated by or on behalf of the Board. The testimony of an official of the Board of Education indicates that no one method of the acquisition of a school site under similar circumstances, whether by donation, negotiated purchase or condemnation, would be considered as unusual. The reasons which X and Y had for agreeing to convey *268 a small parcel of land to the Board of Education are obvious. They were to facilitate the zoning change and the approval of a development of the large tract of remaining land and to make the proposed apartments to be erected in connection with the development more desirable to prospective tenants and therefore more valuable. However, the reasons which caused them to agree to, in effect, donate the parcel of land instead of making a negotiated sale of the property to the Board of Education at a price representing its fair market value are, at least to us, obscure. One of the partners testified that it was done "Just out of a feeling of public spiritedness." On the assumption that the partners intended to do what was eventually done, see Army Times Sales Co., 35 T.C. 688, 704, we may speculate that additional reasons might have been to cast the transaction in a form tending to support a deduction of a charitable contribution to be claimed in an amount greatly in excess of the cost of the property to be conveyed and/or to gain good will of county officials exemplified by the obvious good will of the officer of the Prince George's County Board of Education who testified on *269 petitioners' behalf. In any event, it is clear that the decision to make the 238 conveyance of the parcel of land to the Board as, in effect, a donation was not caused by any compulsion. Cf. Jordon Perlmutter, 45 T.C. 311. Nor can we see any significant benefit to be anticipated by X and Y as a result of donating the parcel of land to the Board rather than selling it at a price. In both cases the erection of a school would be obtained for the development but in the case of a sale X and Y would obtain not only the erection of a school on their subdivision but also in addition obtain the payment of money. After the zoning of the tract of land herein question had been changed and X and Y had acquired title to it but before the 10-acre parcel of land had been conveyed to the Board of Education, X and Y entered into a long and elaborately drawn contract of sale with a newly organized partnership or joint venture having nine members, one of which was the partnership composed of the petitioners herein. X and Y, individually and as trustees for a partnership, held a 20-percent interest in the new joint venture known as Greenbelt Associates. Prior to the execution of the *270 contract of sale between X and Y and Greenbelt Associates the other members of Greenbelt Associates were told by X and Y of their oral agreement to donate the 10-acre parcel of the 390-acre tract to the Board of Education and it was understood by all of the parties to the contract that this parcel was to be conveyed to the Board without charge because of a feeling of obligation on the part of X and Y arising from their oral agreement with the Board of Education to donate land for a school, and if the conveyance was by Greenbelt after it had acquired title from X and Y, then X and Y would release the school site from the purchase money mortgage "without requiring additional payments by purchaser on account thereof." However, no one acting on behalf of Greenbelt Associates or petitioners ever made any commitment to the Board of Education or conferred with any of its officers or employees with regard to this conveyance and no one connected with the Board was aware of any understanding or agreement between X and Y and Greenbelt relating thereto. The contract of sale was executed on March 21, 1961, before any conveyance of the 10-acre parcel was made. The purchase price to be paid by *271 Greenbelt Associates under the contract for the tract of land warranted by X and Y to contain "at least three hundred ninety (390) acres" was $2,000,000. The sole reference which the contract made to the 10-acre parcel of land was in paragraph 4. In our findings we have quoted this paragraph in its entirety. The photostatic copy of the contract which was attached as an exhibit to the stipulation indicates that the second and last sentence of the paragraph was added after the rest of the contract was drafted. The first (and only other) sentence of the paragraph appears to us to be deliberately ambiguous with regard to the question of who is to do what with regard to the conveyance of the 10-acre parcel. In our opinion the purpose of this sentence (the only sentence of the paragraph when the contract was first written) was to safeguard the validity of the contract and the amount of the purchase price ($2,000,000) payable thereunder from any question which might be raised on account of the acquisition by Greenbelt for its permanent use of 380 acres instead of 390 acres because of a prior oral commitment by the sellers (who were holders of an important membership interest in the purchasing *272 joint venture) to donate 10 acres of the tract to the County Board of Education for use as a school site. In contrast to the ambiguity of the first sentence, is the definite provision of the second (and added) sentence which was obviously inserted in paragraph 4 for the purpose of protecting the interests of Greenbelt Associates (the purchasers) and was to the effect that the seller "will release the above school site from the mortgage without requiring additional payments by the purchaser on account thereof." Thus the contract noted a general understanding that a 10-acre parcel of the land described in the contract was "to be conveyed to the * * * Board of Education * * * without charge" without specifically imposing on any specified person the obligation of executing the conveyance at any specified time but imposed the definite obligation on the seller to release the school site from the mortgage. The conveyance of the tract of land (described in the deed as containing 390.41 acres) by X and Y to trustees for Greenbelt Associates was executed on July 18, 1961, pursuant to the terms of the contract of March 21, 1961, which called for the payment of a purchase price of $2,000,000. *273 Approximately 9 1/2 months later (on May 7, 1962) the grantees in the deed dated July 18, 1961, conveyed to the Board of Education the fee simple title to real estate 239 described as "Parcel Numbered three (3) as per plat of a subdivision known as 'Section One, SPRINGHILL LAKE' recorded in Plat Book W.W.W. 42 at Plat 57 among the Land Records of Prince George's County, Maryland." Both petitioners and respondent have assumed in their briefs and arguments that the real estate thus described is the 10-acre parcel of the land described in the contract of March 21, 1961, and referred to in paragraph 4 thereof, and we make the same assumption. This is the conveyance upon which petitioners predicate their claim to a charitable contribution. The law with regard to gratuitous contributions to charitable organizations by business entities is not free from doubt. See Jordon Perlmutter, supra, at p. 317; and Sarah Marquis, 49 T.C. 695 in which (at p. 702) we directed the attention of the reader to both the Perlmutter case and the case of Crosby Valve & Gage Co. v. Commissioner, 380 F. 2d 146 (C.A. 1, 1967). In the instant case, Greenbelt Associates *274 conveyed a parcel of land which it had acquired some 9 months before to a political subdivision of Maryland for exclusively public purposes and received no payment therefor from the political subdivision. The members of Greenbelt Associates would be entitled to deductions, to the extent of the value of the land conveyed, on account of "Charitable, Etc., Contributions and Gifts" pursuant to the provisions of section 170(a)(1) and (c)(1) unless the conveyance was compelled by law or enforceable contract or unless the grantors received such a quid pro quo in the form of special economic benefit as to make a conclusion that there was a gift or contribution within the capacity of only an overtaxed imagination. As we have pointed out, the conveyance was not compelled by any statute or ordinance even by one of colorable constitutionality. Cf. Jordon Perlmutter, supra. In our opinion it was not compelled by a contract enforceable by the Board of Education of Prince George's County as a third party donee beneficiary of the contract of March 21, 1961. In Marlboro Shirt Co., Inc. v. American District Telephone Co., 196 Md. 565, 77 A. 2d 776, the Maryland Court *275 of Appeals stated that "[it] must clearly appear that the parties [to a contract] intended to recognize [a third party] as a primary party at interest and as privy to the promise" in order for a third party to acquire a right of action against a promisor or promisee. As we construe Maryland law on this point, it appears that a third party will be recognized as a third party donee beneficiary only if the promisor and promisee specifically intended to create a legally enforceable right in favor of the third party to sue on the contract. Citations in pertinent Maryland Court of Appeals cases, traced in the footnote below, [5] lead us to language in Pennsylvania Steel Co. v. New York City Railway Co., 198 Fed. 721, 739 (C.A. 2) which further enlightens us as to the meaning of the terms "primary party at interest" and "[a party] privy to the promise" used by the Maryland Court of Appeals in the Marlboro Shirt Co. case and enforces our interpretation stated above. The language in the Pennsylvania Steel Co. case is the following: It is generally held, subject to qualifications, that *276 a third person may sue upon a promise made to another for his benefit. Sometimes the right is placed by the courts upon provisions in codes giving the "real party in interest" the right to prosecute suits. Sometimes it is based upon the theory of a trust; the promisor being regarded as trustee for the third party. Sometimes it is based upon the theory of agency; the promisee in the contract being considered the agent of the third party who adopts his acts in suing upon the contract. But whatever may be the correct theory, one thing is essential to the right and that is that the third person be the real promisee - that the promise be made to him in fact although not in form. It is not enough that the contract may operate to his benefit. It must appear that the parties intend to recognize him as the primary party in interest and as privy to the promise. Under Maryland law, the language of the contract itself is the primary source for determining whether a third party is intended to be a primary party in interest and 240 therefore a donee beneficiary. Shillman v. Hobstetter, 249 Md. 678, 241 A. 2d 570, 576 (1968). *277 We consider that it does not clearly appear from the language of the contract of March 21, 1961, that the parties thereto specifically intended to create thereby a legally enforceable right on the part of the Board of Education to sue on the contract. Therefore we conclude that the conveyance could not be compelled by enforceable contract. With regard to the quid pro quo consisting of special economic benefits to Greenbelt Associates we are unable to see how any economic benefits *278 could be considered as having inured to Greenbelt Associates as a result of the gratuitous conveyance referred to in the contract. As the official of the Prince George's County Board of Education testified, if the parcel of land needed for the school had not been donated to the Board by the gratuitous conveyance, the Board would have acquired it by negotiated purchase or by condemnation, either of which methods of acquisition would have required the payment of a price to Greenbelt Associates. By making the gratuitous conveyance to the Board, Greenbelt Associates obtained the erection of a school located within their development and adding value to it. If such a gratuitous conveyance had not been made, the Board would have paid a price for the land either on purchase or condemnation and then erected the school. In any event the school would have been erected on the development of Greenbelt Associates but if the Board acquired the requisite parcel of land by any method other than a gratuitous conveyance Greenbelt Associates would not only have a school on their development but would also have a sum of money representing the price of the land conveyed. Therefore we can see no real economic *279 benefits to Greenbelt Associates resulting from the gratuitous conveyance of the parcel of land to the Board of Education under the facts of this case. Having concluded that the gratuitous conveyance of May 7, 1962, was a charitable contribution by the members of Greenbelt Associates to the Board of Education of Prince George's County, it becomes necessary to determine the amount of that contribution in order to determine the amounts of the deductions on account thereof properly allowable to petitioners. Ordinarily the rule is that if a charitable contribution is made in property rather than money the amount of the consequent allowable deduction is the fair market value of the property at the time of its contribution. Cf. Jacob J. Cooley, 33 T.C. 223 (1959). The burden of proving that fair market value is part of the petitioners' burden of proof. In the instant case the best and most convincing evidence of the fair market value of the parcel of land conveyed to the Board of Education on May 7, 1962, was the amount paid by Greenbelt Associates a little over 9 months before *280 in an arm's-length purchase of the larger tract out of which the parcel was taken. There is nothing in the record to suggest the happening of any event in those intervening 9 months which would effect the fair market value of the property. Greenbelt Associates paid $2,000,000 for 390 acres, or approximately $5,130 per acre. Accordingly, we have concluded that the fair market value of the 10-acre parcel of land conveyed to the Board of Education as proved by petitioners in the record before us was $51,300. It follows that petitioners in each case are entitled to a charitable contribution in the amount of $1,710 (1/3 of 10% of $51,300). Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Milton and Lillian Turner, docket No. 4460-67; and Eugene Scheffres, docket No. 4461-67.↩
2. Hereafter, all section references are to the Internal Revenue Code of 1954, unless otherwise noted.↩
3. Petitioners' accountant testified to the effect that "on the tax return" "the cost of this 10-acre parcel" ("approximately $55,000") "was charged to capital and the partners were advised to take their pro rata share of the market value as a charitable contribution on their individual returns." The copy of the Form 1065 return of Greenbelt Associates attached to the Stipulation as an exhibit is so poorly reproduced as to be extremely difficult to decipher. After carefully scanning it with a magnifying glass, we are able to find no reference therein to a charge to capital of $55,000. Copies of 3 letters addressed to Herman Greenberg, one of the members of Greenbelt Associates, and identified in the Stipulation of Facts as petitioners' exhibit 12, purport to be of letters written in 1962 by 3 appraisers, appraising the 10-acre parcel conveyed to the Board of Education at $120,000, $125,000 and $150,000. All of these letters stress the fact that the appraisals are based on the hypothesis that the land will be devoted to its "highest, best, and most profitable continuous use," i.e. "for garden type apartment development." It is stipulated that these letters "* * * are appraisals, which were given by the persons whose signatures appear thereon." It is also stipulated that "respondent accepts the authenticity of these appraisals, but does not agree that the valuations contained therein are correct."↩
4. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction. (1) General Rule. - There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year * * * * * * (c) Charitable Contribution Defined. - For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of - (1) A State, a Territory, a possession of the United States, or any political subdivision of any of the foregoing or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.↩
5. The language in the Marlboro Shirt Co. case, supra, which we have quoted also appears in Mackubin v. Curtiss-Wright Corp., 190 Md. 52, 57 A. 2d 318, 321, cited by the Maryland Court of Appeals in the Marlboro Shirt Co. case. As authority for its language in the Mackubin case, the Maryland Court of Appeals cites In Re Gubelman, 13 F. 2d 730 (C.A. 2), in which the same language appears without enlargement, but in which further citation is made to Pennsylvania Steel Co. v. New York City Railway Co., 198 F. 2d 721↩ (C.A. 2) where additional discussion appears, which amplifies the meaning of the language contained in the Marlboro Shirt Co. case which we quoted.